Pat WILDIN, on behalf of herself and all others similarly situated, Plaintiff-Appellant,†

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 01–0833. Submitted on briefs November 8, 2001.—Decided November 29, 2001.*

## 2001 WI App 293

(Also reported in 638 N.W.2d 87.)

† Petition to review denied 3-19-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Susan LaCava* of *Susan LaCava, S.C.*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Earl H. Munson* and *Catherine M. Rottier* of *Boardman, Suhr, Curry & Field LLP*, Madison.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. VERGERONT, P.J. This appeal concerns the interpretation of insurance policy language governing the insurer's obligation to pay for damage to its insured's vehicle. Pat Wildin, the insured, contends that the circuit court erred in holding that the language in her American Family Mutual Insurance policy plainly permitted American Family to pay only for repairs to her vehicle, even if the repairs could not fully restore the vehicle to its pre-collision value. We conclude the

480

circuit court was correct. We therefore affirm the court's order dismissing the complaint.

## BACKGROUND

¶ 2. Wildin's complaint alleges the following.[1] On August 6, 1999, Wildin purchased an automobile policy from American Family to cover a 1999 Kia Sportage she had just purchased. Several days later the vehicle was damaged in a collision. American Family paid $5,850.19 for repairs to the vehicle. The damage to the vehicle included unibody structure and/or frame damage such that no repair could have restored the vehicle to its pre-loss condition. As a result, Wildin's vehicle was worth less than similar vehicles that are in their original condition. Wildin alleged that American Family breached its contractual obligation by failing to pay her for the diminished market value to her vehicle in addition to the cost of repairs.[2]

¶ 3. Wildin's insurance policy was attached to the complaint. Part IV provided that American Family would pay for loss due to a collision, with loss defined as "direct and accidental loss of or damage to your insured car and its equipment." The limits of American Family's liability for loss were defined as follows:

> LIMITS OF LIABILITY. Our limit of liability for loss shall not exceed the least of:

---

[1] Wildin alleges that she brings the complaint on behalf of others similarly situated, but because the complaint was dismissed before a class was certified, we consider only the allegations pertaining to Wildin.

[2] The complaint also alleged a claim for breach of a covenant of good faith and fair dealing and a claim for bad faith, both of which depend upon there being a breach of the insurance contract.

 1. The actual cash value of the stolen or damaged property.

 2. The amount necessary to repair or replace the property.

 3. The decrease in value of the damaged property caused by the loss.

¶ 4. American Family moved to dismiss the complaint on the ground that it failed to state a claim for relief. American Family argued that under the plain language of the policy it had no obligation to Wildin beyond paying for the repair of her car, which it had done. The circuit court agreed with American Family and dismissed the complaint.

## DISCUSSION

¶ 5. On appeal, Wildin renews the argument she made in the circuit court in opposition to the motion to dismiss. She contends that since "repair" in the limits of liability provision is not defined, it must be interpreted as a reasonable insured would interpret it. A reasonable insured, Wildin continues, would understand "repair" to mean restore to pre-loss condition. According to Wildin, the limits of liability provision is ambiguous because it is not clear whether American Family may elect to pay for repairs to a vehicle that is not able to be fully repaired; and if American Family may do that, it is not clear whether American Family may avoid compensating the insured for the diminished value of the vehicle. That ambiguity, Wildin concludes, requires that the policy language be construed in her favor—to require that American Family pay for the diminished value of her vehicle in addition to paying for the repairs.

¶ 6. Whether a complaint states a claim for relief presents a question of law, which we review de novo. *Mose v. Tedco Equities-Potter Rd. Ltd. P'ship*, 228 Wis. 2d 848, 855, 598 N.W.2d 594 (Ct. App. 1999). In deciding whether a complaint states a claim for relief, we take the allegations of the complaint as true. *Id.* Because the insurance policy was attached to the complaint, we consider the policy in addition to the allegations of the complaint. WIS. STAT. § 802.04(3) (1999–2000).

¶ 7. The interpretation of an insurance contract is a question of law subject to de novo review. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it. *Id.* The words of an insurance policy are given their common and ordinary meaning. *Id.* Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law. *Id.* This is to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake. *Id.*

¶ 8. Whether the language of an insurance policy is plain or ambiguous is a question of law, which we review de novo. *Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 561–62, 278 N.W.2d 857 (1979). Contract language is considered ambiguous if it is susceptible to more than one reasonable interpretation. *Danbeck*, 2001 WI 91 at ¶ 10, 245 Wis. 2d 186, 629

N.W.2d 150. If the language is ambiguous, it is construed in favor of coverage. *Id.*

¶ 9. We do not agree with Wildin that the policy language at issue here is ambiguous. The "limits of liability" provision plainly lists three separate options and permits American Family to choose the option which costs the least. Although the word "repair" is not defined in the policy, as used in this provision it is not ambiguous. A common word used in an insurance policy that is not defined in the policy is to be given its ordinary meaning, that is, the meaning understood by the average reasonable person; and the ordinary meaning may be established by reference to a recognized dictionary. *Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 722–23, 575 N.W.2d 466 (1998). The common and ordinary meaning of "repair" is "restore by replacing a part or putting together what is torn or broken." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (1993). "Repair" is not ordinarily understood to mean to restore to pre-broken or pre-collision market value, as Wildin argues.

¶ 10. Since the policy plainly gives American Family the right to elect the least expensive of the three options, it may choose to repair a vehicle even if all possible repairs do not restore the vehicle to its pre-collision market value. The complaint does not allege, and Wildin does not argue, that any repair was not done that could have been done or that her repaired vehicle is not fully functioning.

¶ 11. In order to arrive at Wildin's interpretation of the policy provision, we would need to combine the repair obligation in the second option with payment for decrease in value contained in the third option. However, that is not a reasonable reading of the policy

484

provision, since the second and third options are clearly separate, and American Family may choose one or the other (or the first option).

¶ 12. Wildin contends that *Housner v. Baltimore-American Ins. Co.*, 205 Wis. 23, 236 N.W. 546 (1931), supports her position. In *Housner*, the automobile had been stolen and recovered. In that situation, the insurance policy gave the insurer the option of returning the recovered vehicle to the insured "with compensation for physical damage," rather than keeping the car and paying the appraised value at the time of the theft. *Id.* at 26. The dispute centered on the meaning of "compensation for physical damage." The court concluded it meant a sum that would put the automobile in the condition it was at the time of the theft, reasonable wear and tear excepted, and the further sum necessary to compensate for actual wear and tear. *Id.* at 29. The court rejected the insurer's argument that the general limits of liability provision, which limited the insurer's obligation to "what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality," warranted a different result— first, because the provision obligated the insurer to replace the automobile or its parts "with others of identical value," and second, because the options of "compensation for physical damage" was not affected by the general limits of liability. Because the policy language at issue in *Housner* is not the same as that in Wildin's policy, neither the reasoning nor the result in *Housner* is applicable.

¶ 13. Wildin also relies on two other cases that, we conclude, do not support her position: *Nashban Barrel & Container Co. v. G. G. Parsons Trucking Co.*, 49 Wis. 2d 591, 605, 182 N.W.2d 448 (1971), and *Krueger v. Steffen*, 30 Wis. 2d 445, 449, 141 N.W.2d 200

485

(1966). Both of these cases are concerned with the damages that may be recovered from a negligent tortfeasor for damage to personal property and not with interpreting language in an insurance policy.

¶ 14. Because the circuit court correctly determined that the insurance policy did not require American Family to compensate Wildin for the diminished value of her vehicle after paying for all necessary repairs to the vehicle, the court correctly concluded that the complaint did not state a claim for breach of contract. Accordingly, we affirm the order dismissing the complaint.

*By the Court.*—Order affirmed.