[No. 84500-0.   En Banc.]
Argued March 8, 2011.     Decided December 22, 2011.

DAVID MOELLER, *Respondent,* v. FARMERS INSURANCE COMPANY OF WASHINGTON ET AL., *Petitioners.*

*Jill D. Bowman* and *Stevan D. Phillips* (of *Stoel Rives LLP*), for petitioners.

*Stephen M. Hansen* (of *Law Offices of Stephen M. Hansen PS*); and *Kenneth W. Masters* and *Shelby R. Frost Lemmel* (of *Masters Law Group PLLC*) (*Elizabeth Cabraser* and *Scott P. Nealey* of *Lieff Cabraser Heimann & Bernstein*, of counsel), for respondent.

*James E. Lobsenz* on behalf of American Insurance Association and Property Casualty Insurers Association of America, amici curiae.

*Andrea H. Bernarding, Michael Nelson, Kymberly Kochis,* and *Jason M. Kurtz* on behalf of National Association of Mutual Insurance Companies, amicus curiae.

¶1 STEPHENS, J. — In this class action against Farmers Insurance Company of Washington and Farmers Insurance Exchange (collectively Farmers), we must decide if a contract between an auto insurer and its insured provides coverage for the diminished value of a postaccident, repaired car. This case also requires us to consider whether the class here was properly certified. We affirm the Court of Appeals and hold that the policy language at issue allows recovery for diminution in value and that the class was properly certified.

## FACTS AND PROCEDURAL HISTORY

¶2 In November 1998, David Moeller's 1996 Honda Civic CRX was damaged in a collision. Moeller had an insurance policy through Farmers. The parties cite the following portions of the insurance contract as relevant:

**DEFINITIONS**

. . . .

**Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **Insured person**.

. . . .

**Damages** are the cost of compensating those who suffer **bodily injury** or **property damage** from an **accident**.

. . . .

**Property damage** means physical injury to or destruction of tangible property, including loss of its use.

. . . .

## PART IV – DAMAGE TO YOUR CAR

. . . .

### Coverage G – Collision

We will pay for **loss** to **your Insured car** caused by **collision** less any applicable deductibles.

. . . .

### Additional Definitions Used in This Part Only

. . . .

2. **Loss** means direct and accidental loss of or damage to **your Insured car**, including its equipment.

. . . .

### Limits of Liability

Our limits of liability for **loss** shall not exceed:

1.  The amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality, or with new property less an adjustment for physical deterioration and/or depreciation.

. . . .

### Payment of Loss

We may pay the **loss** in money or repair or replace damaged or stolen property.

Suppl. Br. of Resp't at 3; *see also* Pet. for Discretionary Review at 2.

¶3 Farmers chose to repair Moeller's damaged car. Moeller authorized the repair and did not request an appraisal of his loss.[1] Moeller acknowledged that the repairs were complete and acceptable. Farmers paid the repair cost, less Moeller's $500 deductible.

¶4 In May 1999, Moeller brought suit on behalf of himself and other similarly situated Farmers policyholders in Washington State. He asserted a breach of contract claim on the grounds that Farmers failed to restore his vehicle to its "pre-loss condition through payment of the difference in the value between the vehicle's pre-loss value and its value after it was damaged, properly repaired and returned." Clerk's Papers (CP) at 435.[2]

¶5 In September 2002, following a hearing that extended over four days, the trial court granted Moeller's motion for class certification. The court noted that one factor, the likelihood of difficulty in managing the class action as proposed, was "heavily disputed," CP at 1597, but found certification appropriate. The Court of Appeals denied discretionary review of the certification order.

¶6 Several months later, Farmers successfully moved for summary judgment, arguing that Moeller's diminished value claim was precluded by the language of the insurance policy. Moeller appealed, and Farmers cross appealed the class certification. The Court of Appeals reversed the trial court's grant of summary judgment and affirmed its class certification. *Moeller v. Farmers Ins. Co. of Wash.*, 155 Wn. App. 133, 229 P.3d 857 (2010). Farmers filed a petition for review with this court, which was granted. *Moeller v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 1001, 234 P.3d 1172 (2010).

---

[1] The policy allows the insured to demand an appraisal if he or she disputes Farmers' valuation of loss.

[2] Moeller made a number of other claims, including insurance bad faith and Consumer Protection Act, chapter 19.86 RCW, violations, but those are not before us.

## ANALYSIS

¶7 This case concerns coverage for the diminished value of a repaired vehicle after a collision. In the past decade, many courts and state legislatures have considered this issue, with varying results. *See* Janet L. Kaminski, *Insurance Claim for Car's Diminished Resale Value*, ST. OF CONN. GEN. ASSEMBLY OFF. OF LEGIS. RES. REP. (Jan. 3, 2007), http://www.cga.ct.gov/2007/rpt/2007-R-0011.htm. The question boils down to what ' it means to pay for loss to an insured's car, i.e., whether it means just restoring the vehicle to usable condition or also encompasses lost value.

¶8 As the Court of Appeals recognized, courts have split on this issue, though the split must be viewed in light of the specific policy language at issue and how the issue was framed in a particular case. *Moeller*, 155 Wn. App. at 144 n.10. The Court of Appeals found persuasive the view of courts such as those in Oregon and Georgia, which have held that diminished value is a covered loss and is not excluded by limits of liability or payment of loss provisions similar to the provisions found in the contract here. *Id.* at 144 n.10, 145 n.11. For the reasons explained below, we agree with the Court of Appeals, though we find the question closer than the Court of Appeals did. It appeared to hold the Farmers policy unambiguously provided diminished value coverage. We instead find the limiting language in the policy ambiguous and accordingly construe it most favorably to the insured. We also affirm the class certification.

*A.   Does Farmers' insurance policy provide coverage for diminished value following postaccident repairs?*

¶9 As noted, the question presented requires us to determine whether Moeller's insurance policy requires Farmers to repair a car so that it is in substantially the same

*functional condition* it was preaccident, or if instead the policy requires Farmers to repair a car so that it has the same *value* it had preaccident. Because the concept of value is integral to the analysis here, the Court of Appeals understandably began with a discussion of the difference between diminished value and stigma damages. *Id.* at 142.

> A vehicle suffers "diminished value" when it sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its preloss condition. Weakened metal that cannot be repaired is one such example. In contrast, "stigma damages" occur when the vehicle has been fully restored to its preloss condition, but it carries an intangible taint due to its having been involved in an accident.

*Id.* Stigma damages are generally disfavored, and Moeller claims he is not seeking stigma damages. *See* Suppl. Br. of Resp't at 12; *see also* Br. of Appellant at 5-7 (setting forth evidence that the type of damage sustained by Moeller's car could never be repaired so that a car was returned to its preaccident condition). Farmers disagrees, noting that the proof Moeller would offer includes figures showing the decreased auction value of cars that have been in an accident and that this is nothing more than a repackaging of stigma damages. *See* Pet'rs' Suppl. Br. at 13. While the parties dispute the nature of Moeller's claim in this respect, this debate has little bearing on the plain language of the policy at issue, which is the focus here. Undoubtedly, the nature of the damages Moeller claims and how they can be proved will be explored by the trial court should this case proceed to trial.

*Standard of Review and Rules of Construction*

¶10 Our review of a trial court's summary judgment order is de novo. In addition, the interpretation of language in an insurance policy is a matter of law. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997). We view an insurance contract in its entirety and cannot interpret a phrase in isolation. *Id.* at 424. "When

construing the policy, the court should attempt to give effect to *each* provision in the policy." *Id.* A determination of coverage involves two steps: first, "[t]he insured must show the loss falls within the scope of the policy's insured losses." *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992). Then, in order to avoid coverage, the insurer must "show the loss is excluded by specific policy language." *Id.*; *see also State Farm Fire & Cas. Co. v. Ham & Rye, LLC*, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007).

¶11 The legislature has declared that the "business of insurance is one affected by the public interest." RCW 48.01.030. "Exclusions from insurance coverage are contrary to the fundamental protective purpose of insurance, and we will not extend them beyond their clear and unequivocal meaning." *Ham & Rye*, 142 Wn. App. at 13 (citing *Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998)). Thus, ambiguity is resolved in favor of the policyholder, and exclusionary clauses are construed strictly against the insurer. *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251 (1987).

¶12 Undefined terms in an insurance policy are given their ordinary and common meaning, not their legal, technical meaning. *Peasley*, 131 Wn.2d at 424. Likewise, the contract as a whole "must be read as the average person would read it; it should be given a 'practical and reasonable rather than a literal interpretation', and not a 'strained or forced construction' leading to absurd results." *Eurick*, 108 Wn.2d at 341 (quoting *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)).

### Grant of Coverage

¶13 The Court of Appeals explained that the policy at issue covers "loss" to the insured's car and that loss is defined in the policy as direct damage. *Moeller*, 155 Wn. App. at 142. Finding no definition of "direct" or "damage" in the policy, the Court of Appeals looked elsewhere for defi-

nitions, noting that " 'direct' " means a " 'causal relation-ship' " and " 'damage' " means " 'loss due to injury.' " *Id.* at 143 (quoting 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 156:21 (Supp. 2009); Webster's Third New International Dictionary 571 (1976)). Given these defini-tions, the Court of Appeals opined that "Moeller's collision damages have been repaired and Farmers paid for those repairs. But there remains damage that cannot be repaired, e.g., weakened metal. Farmers has not paid for this dimin-ished value loss." *Id.*

¶14 The majority of courts to review the coverage piece of this question have agreed that diminished value is a loss contemplated under policies using similar provisions defin-ing loss. *Id.* at 144 n.8. This is consistent with the views of a leading commentator. "A vehicle is not restored to sub-stantially the same condition if repairs leave the market value of the vehicle substantially less than the value immediately before the collision." 12 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 175:47, at 175-54 (2005).

¶15 Significantly, Farmers does not appear to dispute the notion that diminished value falls within the scope of the coverage grant in its policy, but it maintains that such coverage is foreclosed by policy language limiting Farmers' liability. The scope of the policy's coverage therefore turns on whether the limiting provisions unambiguously exclude diminished value loss.

*Limitations on Coverage*

¶16 The Court of Appeals held that coverage was not limited under the policy. It recognized a division of author-ity on this question, which has been widely considered by other courts.[3] *Moeller*, 155 Wn. App. at 144 n.10 (collecting cases). Here, the limits of liability clause provides that Farmers' liability for loss cannot exceed "[t]he amount

---

[3] Two states have apparently resolved this question through statute, while many others have authorized policy language that expressly excludes diminished value coverage. *See* Kaminski, *supra*, at 2.

which it would cost to repair or replace damaged . . . property with other of like kind and quality, or with new property less an adjustment for physical deterioration and/or depreciation." CP at 20. In other words, argues Moeller, the clause is not "an exclusion for diminished value, rather it simply cap[s] Farmers' liability at the pre-loss value of the vehicle so as to prevent financial betterment." Br. of Appellant at 9. The Court of Appeals agreed with Moeller that the term " 'like kind and quality' " means "a restoration of appearance, function, and value." *Moeller*, 155 Wn. App. at 145 (emphasis omitted). Thus, it concluded the policy requires Farmers to repair Moeller's vehicle and pay him the difference in value between his repaired vehicle and its preaccident worth. This accords with a minority view holding the meaning of "repair" unambiguously includes an accounting of pre- and post-accident value. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 505-08, 556 S.E.2d 114 (2001); *Gonzales v. Farmers Ins. Co. of Or.*, 345 Or. 382, 394, 196 P.3d 1 (2008). Other courts have held that the phrase "like kind and quality" is ambiguous and therefore must be construed against the insurer. *See, e.g., Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1225 (Colo. App. 2000).

¶17 Farmers claims diminished value loss is unambiguously excluded by its limits of liability and payment of loss provisions. It argues that a car is either a total loss or it is repairable and that an insurer meets its obligation to repair when it returns the car to good and useable condition. Pet'rs' Suppl. Br. at 4-8. Farmers contends that the Court of Appeals' view reads the insurer's option to repair out of the contract. Farmers maintains that "like kind and quality" means "if an insurer elects to repair a car and must replace parts in doing so, then the replacement parts must be of 'like kind and quality,' " or "if the insurer elects to replace a damaged car, then the replacement must be of " 'like kind and quality.' " *Id.* at 11 (citing *Davis v. Farmers Ins. Co. of Ariz.*, 2006-NMCA-99, 140 N.M. 249, 255, 142

P.3d 17). Likewise, Farmers contends that the Court of Appeals ignored the policy's payment of loss provision, which clearly gives Farmers the option of compensating loss by either money *or* repair *or* replacement—but does not allow a combination of the three.

¶18 Farmers relies on "[t]he modern majority of cases [that] agree that 'repair or replace' unambiguously refers to physical restoration of the vehicle." *Davis*, 140 N.M. at 253. These courts have variously found that value was not required by a "repair or replace" policy because repair unambiguously encompasses only a concept of tangible, physical value, *see, e.g., Sims v. Allstate Ins. Co.*, 365 Ill. App. 3d 997, 1001, 851 N.E.2d 701, 303 Ill. Dec. 514 (2006), or because a reading that encompassed value would eliminate an insurer's option to either repair or compensate with money. *See, e.g., O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001); *Sims*, 365 Ill. App. 3d at 1003-04; *Davis*, 140 N.M. at 255.

¶19 For a variety of reasons, we reject this view and conclude that the minority view on the proper interpretation of the limitations at issue is the more compelling. First and foremost, the majority view's framework ignores important presumptions in favor of the insurance consumer that are inherent in the rules of construction regarding insurance contracts. We must read an insurance contract as an average person would read it. *Eurick*, 108 Wn.2d at 341. Thus, the lens through which we view this question is from the point of view of the consumer. From this point of view, the bargain of the contract is to return the consumer to his preaccident position with respect to the value of his car. Strictly construing the limiting language of Farmers' policy, as we must, it does not convey to the average policyholder that the value of coverage may be less if Farmers repairs a vehicle rather than replacing or "totaling" it. Rather, the reasonable expectation is that following repairs, the insured will be in the same position he or she enjoyed before the accident.

¶20 Farmers contends that the phrase "like kind and quality" carries with it no concept of value but simply means any repairs will be made with parts of like kind and quality. But even Farmers' interpretation does not rule out a reading of the contract that reasonably assumes that repairs of like kind and quality will return the car to its preaccident value. Certainly, an average consumer would expect to be put in the same position whether his or her car was "totaled" or repaired. Moreover, under the policy, the phrase "like kind and quality" applies to replacement as well as repair. Farmers does not contend that in replacing a damaged car or damaged equipment, an acceptable substitute is a replacement that has suffered an accident. This would put the insured in the position he found himself in *after* the accident, not before. We find the limits of liability provision ambiguous at best. Because ambiguities are construed against the insurer, this clause does not relieve Farmers from covering a diminution in value between a preaccident and postrepair vehicle. *Accord Hyden*, 20 P.3d at 1225; *Mabry*, 274 Ga. at 505-08.[4]

¶21 Farmers claims that Moeller's reading of the limits of liability clause means Farmers loses its option to repair instead of "totaling out" the car. But under Moeller's reading, Farmers retains that option; it is merely that either option must result in coverage of equal value to the insured. Likewise, the plain language of the payment of loss provision also does not foreclose coverage. While the provision is phrased in the disjunctive, giving Farmers the option to either compensate by monetary payment *or* repair, the word "or" does not render the options mutually exclusive. For example, the policy recognizes that loss may be recouped

---

[4] While the Court of Appeals appeared to find the clause "like kind and quality" unambiguous, we think the question is closer, as Farmers' reading of the policy is not unreasonable. This is not to suggest it is *equally* reasonable to read the concept of value entirely out of the policy. For example, we find unpersuasive Farmers' analogy to fixing a broken plate by gluing it back to together. Br. of Resp'ts/Cross Appellants at 13. While this may fully restore the functionality of the plate, it seems plainly inadequate from the reasonable consumer's point of view.

when a car is damaged *or* stolen. Clearly, a car may be both damaged and stolen, with losses stemming from each occurrence. It is also reasonable to anticipate situations where some losses are repaired, others replaced, and some compensated with cash, as when a heavily customized car is damaged. The insurer may fix the car but replace or pay cash for the custom equipment. The plain language of the payment of loss provision does not foreclose coverage for diminished value when repairs are made.

¶22 As the Court of Appeals noted, some of the cases relied upon by Farmers as expressing the majority view involved contracts that explicitly gave the insurer the option of choosing between repair or cash compensation for the value of the car, the *lesser* of the two. *Moeller*, 155 Wn. App. at 144 n.10; *see, e.g., O'Brien*, 785 A.2d at 285. Significantly, this policy includes no such language. Other cases in the majority camp also fail to address the ambiguity caused by the policy's promise to repair or replace with "like kind and quality." *See, e.g., O'Brien*, 785 A.2d at 288-91 (focusing its ambiguity discussion on propriety of extrinsic evidence); *Bickel v. Nationwide Mut. Ins. Co.*, 206 Va. 419, 423-24, 143 S.E.2d 903 (1965) (omitting ambiguity discussion altogether). Still others frame much of their analysis around the notion that stigma damages are disfavored, but this is a measure of damage Moeller does not seek. *See, e.g., Davis*, 140 N.M at 253-54 (citing a number of cases that take issue with a claim for stigma damages).

¶23 Because the average insurance consumer would read Farmers' policy to provide coverage of equal value when a car is repaired, replaced, or "totaled," the coverage provision encompasses diminished value loss, and the limits of liability and payment of loss provisions do not unambiguously exclude it. We affirm the Court of Appeals and hold that under the terms of the policy at issue, Farmers' policy provides coverage for diminished value after a car is repaired.

*B. Did the trial court properly certify the class?*

¶24 A trial court's decision to grant class certification is reviewed for abuse of discretion. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 47, 905 P.2d 338 (1995). Abuse of discretion occurs only when a trial court's decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *Mayer v. Sto Indus. Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting *Associated Mortg. Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976)).

¶25 Class certification is governed by CR 23. CR 23 is liberally interpreted because the " 'rule avoids multiplicity of litigation, "saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation." ' " *Weston v. Emerald City Pizza, LLC*, 137 Wn. App. 164, 168, 151 P.3d 1090 (2007) (alterations in original) (quoting *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 318, 54 P.3d 665 (2002) (quoting *Brown v. Brown*, 6 Wn. App. 249, 256-57, 492 P.2d 581 (1971))). A class is always subject to later modification or decertification by the trial court, and hence the trial court should err in favor of certifying the class. *Id.*

¶26 CR 23(a), which concerns the familiar prerequisites for certification involving numerosity, commonality, typicality, and fair and adequate protection of class interests by the class representative, is not at issue here. Instead, the challenge to certification arises from the requirements to maintain a class action under CR 23(b). A class action may be maintained under CR 23(b)(1), (2), or (3). Here, Moeller sought to maintain his class action under both CR 23(b)(2), governing actions for injunctive relief, and CR 23(b)(3), governing actions for damages. The trial court denied certification under CR 23(b)(2), finding the "requested relief, as pled, is predominately a claim for damages, not equitable relief." CP at 1596. Moeller does not challenge

that conclusion. The court did, however, certify the action under CR 23(b)(3), and it is that ruling that concerns us here.

¶27 CR 23(b)(3) requires the court to find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. CR 23(b)(3)(A)-(D) lists "matters pertinent to the findings," including subsection (D), which requires the court to consider the difficulties likely to be encountered in management of a class action.

¶28 Farmers contends that the trial court abused its discretion in certifying the class under CR 23(b)(3) because it did not first require Moeller to prove Farmers' liability as to every member of the class. Pet'rs' Suppl. Br. at 15. "The court disregarded Moeller's admission that not everyone in the class suffered damage caused by Farmers' failure to tender a diminished value payment, and failed to acknowledge that this admission means Moeller cannot establish class-wide liability." *Id.* (footnote omitted). It is a violation of due process, argues Farmers, to allow Moeller to proceed with a plan to obtain a class-wide award of damages because it would allow damages to be awarded before individual class members prove they suffered damage by Farmers. *Id.*

¶29 Farmers exaggerates Moeller's "admission." Moeller points out that the trial court took care to address Farmers' concerns regarding proof of damages and did not find them persuasive enough to bar class certification. Suppl. Br. of Resp't at 15. In addition, Moeller contends he has not actually admitted that some class members have no claim. His "admission" was merely a discussion of how he would arrive at a measure of class-wide damages, taking into account any hypothetical class member whose car might have been in a previous accident and thus experienced no diminution in value. Answer to Pet. for Review at 13-15.

¶30 Moeller is correct that the claimed admission is not particularly relevant. It arises, as Moeller states, in the

context of a discussion as to how the class will provide an accurate estimate of class-wide damages. *See* Report of Proceedings (RP) (June 27, 2002) at 69-103. Moeller is also correct that the trial court specifically noted that class certification would not impede Farmers' ability to defend against individual claims, presumably encompassing a defense based on lack of damages.

> After carefully and closely considering all of these factors, my decision is that a class action is a superior, although not perfect means, for policyholders to pursue any claims they may have for inherent diminished value against Farmers. The Court finds that such an action should not, and will not, impede Farmers' ability to investigate particular class members [sic] claims, and present evidence on individual claims supporting defenses unique to each claim and defend against the nature and extent of damages, if any, in this Court.

CP at 1581.

¶31 Farmers' due process argument relies on *Sitton v. State Farm Mutual Automobile Insurance Co.*, 116 Wn. App. 245, 258 & n.33, 63 P.3d 198 (2003). But *Sitton* is distinguishable from this case. There the trial court accepted a bifurcated trial plan that ultimately resulted in damages being determined before causation. *Id.* at 258-59 & n.33. This proved problematic for the *Sitton* court, which did not reverse the trial court's certification decision under CR 23(b)(3), but did vacate the trial plan. *Id.* at 261. Here, although Moeller established his mathematical model for determining a figure for aggregate, class-wide damages, RP (June 27, 2002) at 69-104, there is no indication that damages would be proved or awarded before causation is determined.

¶32 The standard for class certification is abuse of discretion. The trial court heard four days of oral argument on this issue and considered extensive briefing. *See* CP at 1573. Nothing in the record supports the proposition that the trial court's decision is unreasonable or untenable. We

hold that the trial court did not abuse its discretion in certifying the class under CR 23(b)(3).

## CONCLUSION

¶33  We affirm the Court of Appeals. The trial court did not abuse its discretion in certifying the class under CR 23(b)(3), and Farmers' policy encompasses coverage for diminished value loss.

C. JOHNSON, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶34  MADSEN, C.J. (dissenting) — Today, the court strays from fundamental rules of contract interpretation and rewrites the parties' insurance contract by applying principles of tort law instead of rules of contract construction. The insurance policy at issue plainly states that Farmers Insurance Company of Washington and Farmers Insurance Exchange (collectively Farmers) has the right to repair a damaged vehicle *or* provide monetary compensation to the insured, at its option. Nevertheless, parting company with the vast majority of courts that have considered this issue, the majority requires Farmers to repair a damaged vehicle *and* pay compensation to the insured. Because the majority opinion creates a contractual responsibility that lies nowhere within the terms of the contract, I respectfully dissent.

## Analysis

¶35  We interpret an insurance contract from the point of view of the average person purchasing insurance. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756, 239 P.3d 344 (2010); *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987). However, the focus of this inquiry is necessarily tied to the actual language of the contract. Thus, the majority errs in concluding that from the in-

sured's point of view, "the bargain of the contract is to return the consumer to his preaccident position with respect to the value of his car." Majority at 275. Nothing in the contract supports such an interpretation. In fact, the majority's construction more closely reflects tort law principles and an abstract concept of fairness. Neither of these is relevant when determining the meaning of language in an insurance contract. *Cf. Culhane v. W. Nat'l Mut. Ins. Co.*, 2005 SD 97, 704 N.W.2d 287, 297 ("[b]ecause this is a contract of insurance, 'we do not consider what measure of recovery would make the insured whole after a loss or what would be fair and reasonable compensation for the loss . . . sustained, for we are not deciding a tort claim' " (second alteration in original) (quoting *Carlton v. Trinity Univ. Ins. Co.*, 32 S.W.3d 454, 465 (Tex. App. 2000))). Instead, under the unambiguous terms of the insurance policy, Farmers satisfies its contractual responsibilities when it either repairs a damaged vehicle *or* replaces a vehicle that cannot be repaired—it is not obligated to do both.

¶36 Farmers does not dispute the insured's (David Moeller) contention that diminished value may be a loss within the coverage provision of the contract at issue. Thus, the question is not whether such a loss must be compensated in general, but rather whether it must be compensated under the circumstances here. That is, if the insurer elects to repair the damaged vehicle, and does so to the industry standard, must the insurer also pay diminution in value? To answer this question, it is necessary to examine the limits of liability provision because, although diminished value may constitute a loss under an insurance policy's coverage provision, an insurance company's responsibility to compensate for that loss is nevertheless "circumscribed" by limits of liability and payment of loss provisions. *Sims v. Allstate Ins. Co.*, 365 Ill. App. 3d 997, 1000, 851 N.E.2d 701, 303 Ill. Dec. 514 (2006).

¶37 Under the limits of liability provision of the parties' contract, Farmers' "liability for loss shall not exceed . . .

[t]he amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality, or with new property less an adjustment for physical deterioration and/or depreciation." Suppl. Br. of Resp't Moeller at 3 (emphasis omitted) (setting forth policy). When a term in a policy is undefined, it is given its plain, ordinary, and popular meaning. *Holden*, 169 Wn.2d at 756. The relevant common meaning of "repair" is "to restore by replacing a part or putting together what is torn or broken : FIX, MEND <so neatly *repaired* that he could see no trace of the once familiar rents—T.B. Costain> <*repair* a house> <*repair* a shoe>." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (2002). This is the ordinary meaning that an average purchaser of insurance would give the term. *See Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 472, 209 P.3d 859 (2009).

¶38 In accordance with this definition, Farmers "repairs" a damaged vehicle when it returns the vehicle to substantially the same physical condition that it was in prior to the accident by fixing and replacing damaged parts. *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001). "This definition of repair does not require the insurer to restore the vehicle to factory condition or even to the condition of the vehicle before the accident." *Id.* at 290. Nor does it require the insurer to restore the vehicle to its preaccident market value. *Culhane*, 704 N.W.2d at 295 ("the ordinary meaning of the words 'repair' and 'replace' indicate something physical and tangible").

¶39 Of central importance in this case, repairing a vehicle is not synonymous with replacing a vehicle, and indeed, the insurance contract allows Farmers to "repair *or* replace" a damaged vehicle. Suppl. Br. of Resp't Moeller at 3 (emphasis added).

¶40 Farmers has likened repairing a damaged vehicle to gluing back together a broken plate, explaining that "[i]n both cases, the item is repaired when it is put in good

working order again, and returned to substantially the same form as before the accident." Br. of Resp'ts/Cross Appellants at 13. The majority rejects this analogy because it opines that piecing a plate back together is "inadequate from the reasonable consumer's point of view." Majority at 276 n.4. The majority's standard is wrong. A reasonable consumer's point of view is not the relevant approach. Rather, the relevant inquiry is the meaning the average purchaser of insurance would give the term, as noted, and ultimately whether the insurer has met its contractual obligation. As an ordinary consumer would understand the term, a broken plate is indeed "repaired" when it is glued back together. By definition, an item that is repaired is not new.

¶41 Nonetheless, the majority takes the position that the insurer must also pay diminution in value attributable to the difference between the value before the accident and the value of the repaired vehicle to compensate the insured for damage that cannot be repaired. However, while "[d]iminution in value can be compensated, . . . it cannot be 'repaired' or 'replaced.'" *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005). Unfortunately, the majority tortures the meaning of "repair" by extending it to damage that, by its very nature—and by Moeller's own admission—simply cannot be repaired. *See O'Brien*, 785 A.2d at 290-91 ("[a]scribing to the phrase 'repair or replace' an obligation to compensate the insured for things that cannot reasonably be repaired or replaced violates the most fundamental rule of contract construction"). The majority decision is based on the fallacy that collision damages may be repaired and paid for by the insurer, but that damage remains that cannot be repaired, e.g., weakened metal, and therefore the insurer must also pay for diminution in value. The policy provides an either/or proposition. Either repair or replacement—not both.

¶42 The inclusion of the phrase "like kind and quality" in Moeller's insurance policy does not compel a different

conclusion. First, the surrounding context indicates that the phrase applies only to replacement—not repair—of damaged vehicles. "The phrase 'repair . . . with other of like kind and quality' is nonsensical, indicating that 'like kind and quality' was not meant to modify " 'repair.' " *Davis v. Farmers Ins. Co. of Ariz.*, 2006-NMCA-99, 140 N.M. 249, 142 P.3d 17; *accord Allgood*, 836 N.E.2d at 247-48.[5] Second, even if, as Moeller contends, the term "quality" connotes value, the phrase "like kind and quality" does not mean equal value. "Quality" is modified by the term "like," which the average purchaser of insurance would understand to mean "the same as *or* similar to." WEBSTER'S, *supra*, at 1310 (emphasis added).

¶43 The majority further departs from the clear contractual language by reading out of the contract Farmers' option to repair a damaged vehicle. Both the payment of loss provision and the limits on liability provision are phrased in the disjunctive and plainly contemplate two distinct options: repairing a damaged vehicle or making a monetary payment to the insured.[6] *See Bickel v. Nationwide Mut. Ins. Co.*, 206 Va. 419, 422, 143 S.E.2d 903 (1965) ("when a damaged automobile cannot be repaired it is a total loss, and the liability of the insurer is the difference in the actual cash value of the car immediately before and after the accident, less the amount stipulated in the deductible clause," but if the vehicle "can be repaired, the liability of the insurer is to pay only the cost of repairs, less the amount provided for in the deductible clause"); *Ray v. Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 1416-17, 246 Cal. Rptr. 593 (1988) (if repair "places the automobile substantially in its preaccident condition," insurer may elect to repair the vehicle; if not, vehicle is considered a total loss

---

[5] Farmers' contractual responsibilities when it opts to replace a damaged vehicle are not at issue in this case.

[6] The policy states, for example, "We may pay the loss in money *or* repair or replace damaged or stolen property." Suppl. Br. of Resp't Moeller at 3 (emphasis added and omitted).

and insurer is liable for preaccident market value); 15 GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 54:29, at 432 (Ronald A. Anderson & Mark S. Rhodes eds., 2d rev. ed. 1983) ("[w]here the insurer, in the exercise of its option to repair, restores the automobile to its normal running condition, there is by hypothesis no total loss of the insured vehicle").

¶44 However, the majority decides that where complete repairs cannot return the vehicle to its preaccident condition and market value, Farmers may no longer fulfill its contractual obligation by repairing the damaged vehicle in accord with the terms of its contract. Instead, the majority concludes, Farmers must both repair the vehicle *and* make a monetary payment to the insured. The insurance policy contains no such requirement, and it is untenable under language that gives Farmers the right to repair or replace, at its option. Today's decision not only eliminates Farmers' contractual right to repair the vehicle, it also creates a new obligation with no basis whatsoever in the contract. In contrast to the majority, other courts have correctly declined to render the language of similar contracts meaningless. *See Allgood*, 836 N.E.2d at 248 (policy language allowing insurer to choose between repairing or paying cash value of damaged vehicle would be meaningless if insurer were required to repair vehicle and compensate insured for diminution in value); *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 498, 579 S.E.2d 132 (2003) (same); *Driscoll v. State Farm Mut. Auto Ins. Co.*, 227 F. Supp. 2d 696 (E.D. Mich. 2002) (same); *Sims*, 365 Ill. App. 3d at 1004 (same); *Bickel*, 206 Va. at 423 (same).

¶45 The majority dismisses the clear implication of the disjunctive phrasing in the insurance policy through a contrived interpretation of clearly worded provisions. The majority points out that the term "or" is also used in the phrase "damaged or stolen property" and says that an insured whose vehicle was both damaged and stolen would be able to recover under the terms of this policy. Majority at 276-77. From this, the majority concludes that "or" is an *inclusive* disjunctive.

¶46 It is axiomatic that an insurance policy "should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective." *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 457, 760 P.2d 337 (1988). It does not follow, as the majority apparently believes, that every use of the term "or" in this policy is inclusive. Indeed, it would be absurd to conclude that under the payment of loss provision, Farmers must both repair *and* replace a damaged vehicle—particularly when the limits of liability provision plainly states that Farmers' liability shall not exceed the cost of repairing *or* replacing the damaged property. But following the majority's logic, this provision would have to be read as saying that "Farmers' liability shall not exceed the cost of repairing <u>and</u> replacing damaged property." The absurdity of this reading is obvious, but it demonstrates why one potentially inclusive use of "or" does not mean every time the word is used in a policy it is inclusive.

¶47 The majority also concludes that the policy language is ambiguous and accordingly undertakes to construe this language in the insured's favor. The majority finds ambiguity on the basis that the average consumer's "reasonable expectation is that, following repairs, the insured will be in the same position he or she enjoyed before the accident." Majority at 275. This is deeply flawed analysis. First, as we recently affirmed, "in Washington the expectations of the insured cannot override the plain language of the contract." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 172, 110 P.3d 733 (2005) (citing *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996)). In *Findlay*, 129 Wn.2d at 378, the court observed that "[t]he 'reasonable expectation' doctrine has never been adopted in Washington," but "[r]ather, insurance policies are to be construed as contracts." Under this state's law, there is absolutely no legitimate ground to find ambiguity in the parties' contract

based on the conclusion that an insured has or should have a reasonable expectation that a vehicle will be in the same position as before repairs are made. Moreover, the majority's logic is flawed in any event because the fact that repairs are made will always mean that the insured will not be in the same position as before the vehicle is damaged.

¶48 The second reason why the majority's approach is deeply flawed is because to apply the principle that an ambiguity in an insurance contract is to be resolved in favor of the insured, there must be an ambiguity in the first place. "If policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity." *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993); *see also O'Brien*, 785 A.2d at 288 ("we will not torture policy terms to create an ambiguity where an ordinary reading leaves no room for uncertainty"); *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982) ("when the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented").

¶49 An insurance policy is ambiguous only if the language "is fairly susceptible to two different reasonable interpretations." *Am. Star Ins. Co.*, 121 Wn.2d at 874. There is nothing ambiguous about language stating that the insurer has the option of repairing *or* replacing the damaged property. Indeed, in *Siegle v. Progressive Consumers Insurance Co.*, 819 So. 2d 732 (Fla. 2002) the court observed that no court has found similar contractual language to be ambiguous and a number of courts have explicitly found it to be unambiguous.

¶50 The overwhelming majority of courts addressing this issue have concluded that similarly worded limitations of liability provisions require the insurer to return the vehicle to substantially the same physical condition that it was in prior to the accident but do not require the insurer to return

the vehicle to its preaccident market value. *E.g.*, *O'Brien*, 785 A.2d at 290 ("[t]his obligation includes neither diminution in value resulting from a 'market psychology' nor that resulting from the minute physical imperfections that are inherent to any repair, so long as the repairs have been completed in a workmanlike manner and the vehicle has been returned to substantially the same form as before the accident"); *Carlton*, 32 S.W.3d at 464 ("[i]n common usage, 'repair' means 'to restore by replacing a party or putting together what is torn or broken' or, stated slightly differently, '[t]o bring back to good or usable condition'" and "[t]here is no concept of 'value' in the ordinary meaning of the word[ ] [repair]" (footnote omitted) (quoting policy)); *Pritchett v. State Farm Mut. Auto Ins. Co.*, 834 So. 2d 785, 795 (Ala. Civ. App. 2002) ("the most appropriate interpretation of the 'repair the damaged property or part, or replace the property or part' provision requires that State Farm return the damaged automobile to substantially the same physical and operating condition as it occupied before the collision that caused the damage but that, under the unambiguous language of the insurance policy, State Farm is not required to restore the automobile's value"); *Rezevskis v. Aries Ins. Co.*, 784 So. 2d 472, 474 (Fla. Dist. Ct. App. 2001) ("[p]ursuant to the 'repair or replace' limitation of liability in the Aries policy, the insurer's responsibility is limited to the amount necessary to return the car to substantially the same condition as before the loss"); *Wildin v. Am. Family Mut. Ins. Co.*, 249 Wis. 2d 477, 484, 638 N.W.2d 87 (2001) (where physical damage to the vehicle is such that no repair could return the vehicle to its preloss condition, insurer "may choose to repair a vehicle even if all possible repairs do not restore the vehicle to its pre-collision market value"); *Siegle v. Progressive Consumers Ins. Co.*, 788 So. 2d 355, 360 (Fla. Dist. Ct. App. 2001) ("to repair is to 'restore to a good condition'" (quoting Merriam Webster's Dictionary 621 (1994))); *Sims*, 365 Ill. App. 3d at 1002 ("[b]y their definitions and the common understanding of the terms, 'repair' and 'replace' mean to restore something to its former condition, not to its

former value"); *Allgood*, 836 N.E.2d at 248 ("[d]iminution in value can be compensated, but it cannot be 'repaired' or 'replaced' "); *Hall v. Acadia Ins. Co.*, 2002 ME 110, 801 A.2d 993, 995 ("[t]he act of repairing an object typically focuses upon restoring the object's function and purpose, and not upon returning the object to its earlier worth or value").

¶51 The majority attempts to distinguish this case in order to avoid the clear weight of authority in Farmers' favor. First, the majority relies on language in other automobile insurance policies that explicitly limits the insurer's liability to the "lesser of" the costs of repairing the vehicle or paying its preaccident cash value. Majority at 277 (emphasis omitted). However, because the policy at issue states that Farmers' liability "shall not exceed" the cost of repairing or replacing the damaged vehicle, it necessarily authorizes Farmers to elect the lesser of the two options. Next, the majority critically distinguishes cases from other jurisdictions on the ground the courts ignored the "ambiguity" of the policy language. *Id.* But this policy is simply not ambiguous.

¶52 Finally, the majority contends that decisions addressing "stigma damages" are inapposite because Moeller is not seeking stigma damages. Not so. Although Moeller claims that he is seeking only compensation for tangible damage that defies repair—such as weakened metal and stressed parts—and not for intangible reputational damage (i.e., stigma), he nonetheless contends that the measure of damages is the difference in market value between preaccident and postaccident vehicles—a discrepancy that may reflect tangible damage, stigma, or both. As Farmers explains, Moeller "proposed no method of distinguishing between purchase prices (a) based on alleged non-repairable damage, (b) based on consumer perceptions that damaged and subsequently repaired cars are less valuable than ones that have never been damaged, or (c) based on some combination of both." Pet'rs' Suppl. Br. at 13.

¶53 In any event, the reasoning animating stigma cases is equally applicable in the context of inherently irreparable physical damage. In particular, just as stigma defies repair and thus falls outside an insurer's contractual responsibilities, so too does the physical damage that allegedly remains once a structurally damaged vehicle has been repaired to the best of industry standards.

¶54 In addition, and fundamental to this case, requiring an insurer to compensate the insured for diminished value is completely at odds with the precise disjunctive terms used in the automobile insurance policy at issue, regardless of whether this diminished value results from stigma or tangible imperfections. Indeed, a number of jurisdictions have declined to hold insurers liable for diminished value attributable to irreparable physical damage. *See, e.g., O'Brien*, 785 A.2d at 290 ("[u]nder the 'repair or replace' limitations on the policy," the insurer's "obligation includes neither diminution in value resulting from a 'market psychology' nor that resulting from the minute physical imperfections that are inherent to any repair"); *Wildin*, 249 Wis. 2d at 486 (affirming lower court decision denying compensation for diminished value due to irreparable structural damage); *cf. Johnson v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 1, 2, 754 P.2d 330 (Ct. App. 1988) (upholding trial court ruling denying compensation for diminished value where it was unknown whether the decrease in market value was due to physical imperfections, stigma, or both).

¶55 The plain language of the policy permits the insurer to repair the vehicle or replace it, at the insurer's option. It does not require the insurer to repair the vehicle and also replace any diminution in value. If the vehicle can be repaired, then repair consonant with the industry standard satisfies the insurer's obligation under the contract. No more is required.

¶56 Because today's opinion flies in the face of the clear terms of the contract, I respectfully dissent.

ALEXANDER and J.M. JOHNSON, JJ., and SEINFELD, J. PRO TEM., concur with MADSEN, C.J.

¶57 ALEXANDER, J. (concurring in dissent) — I agree with the dissent written by Chief Justice Madsen. I write simply to express my view that the trial court committed an additional error in granting class action certification.

¶58 Farmers Insurance Company of Washington and Farmers Insurance Exchange (collectively Farmers) contend that the trial court erred in certifying the class because David Moeller, representing the class, failed to satisfy CR 23(b)(3). I agree. Under that rule, class certification may be maintained only if the court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rule sets forth several matters pertinent to whether a trial court should find in favor of certification, including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

CR 23(b)(3). In this case we are concerned with subsection (D), "difficulties likely to be encountered in the management of a class action." CR 23(b)(3)(D); *see* Clerk's Papers at 1596.

¶59 The majority correctly explains that we review the trial court's decision for an abuse of discretion. Majority at

278 (citing *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 47, 905 P.2d 338 (1995)). However, the majority fails to recognize that although Washington courts liberally interpret CR 23, actual, and not presumed, conformance with the rule remains indispensible. *Weston v. Emerald City Pizza, LLC*, 137 Wn. App. 164, 168, 151 P.3d 1090 (2007) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). "Class actions are specialized types of suits, and . . . must be brought and maintained in strict conformity with the requirements of CR 23." *DeFunis v. Odegaard*, 84 Wn.2d 617, 622, 529 P.2d 438 (1974).

¶60 In my view, the trial court abused its discretion when it found that common issues predominate over individual ones and that a class action is superior to other methods of adjudicating the disputes. My concern is with the plaintiffs' intended method of arriving at the measure of damages. Moeller does not plan to prove his claim of breach of contract and resulting injury with evidence of the preaccident and postrepair values of class members' cars. Instead, Moeller intends to use a statistical methodology and data from car auction sales to prove that, on average, cars that are "wrecked and repaired" sell for lower prices than do cars that are "unwrecked" and therefore, as a statistical matter, diminished value exists. Verbatim Report of Proceedings (VRP) at 49. Moeller then plans to categorize and quantify the alleged average decreases in value associated with types or amounts of damage, multiply each alleged average amount by the number of class members in each damage category, and then tally the numbers to provide a class-wide " 'damage[s] estimate.' " Pet. for Discretionary Review at 15 (alteration in original) (citing VRP at 63-64, 73-78, 91-94, 160).

¶61 The proposed measure of damages should not be permitted on a class-wide basis because individualized proofs of the preaccident and postrepair values of each damaged car should be required to ascertain which of the

thousands of class members actually suffered damage caused by Farmers' failure to tender a diminished value payment. Additionally, Moeller should be required to prove how much damage each individual class member sustained. The problem with the proposed method of calculating damages is that there is no way to ensure that each car included in the model actually sustained diminished value. Significantly, Moeller admitted that the class may include cars that have been in an accident that "replicate[d]" an earlier accident, "in which case they would get no [diminished value]." VRP at 77.

¶62 The proposed measure of damages also fails to take into account the scenario of a car that had dents and scratches prerepair that, when fixed with a new paint job, increased the value of the car beyond any postaccident, diminished value due to weakened metal. To account for those class members who have no viable damages claim, the trial court would allow the plaintiffs to "lop . . . off" a percentage of Moeller's class-wide damages estimate. VRP at 77. This method of calculating damages potentially allows damages to be awarded without competent proof of liability to every class member. Although the majority properly acknowledges that a car that increases in value postrepair cannot be included in the class, it dismisses Farmers' concern that " 'not everyone in the class suffered damage caused by Farmers' failure to tender a diminished value payment' " as "not particularly relevant." Majority at 279 (quoting in part Pet'rs' Suppl. Br. at 15). Contrary to what the majority suggests, the question of whether an individual class member suffered damage is highly relevant to whether that class member is entitled to receive damages from Farmers.

¶63 Additionally, the trial plan effectively converts the damages element of Moeller's claim into an affirmative defense. This impermissibly shifts the burden to prove damages from the plaintiffs to the defendant. This offends due process. *See Sitton v. State Farm Mut. Auto Ins. Co.*,

116 Wn. App. 245, 258, 63 P.3d 198 (2003) (vacating a class-certification trial plan because its effect was to "eliminate causation as an element of plaintiffs' bad faith and Consumer Protection Act [(ch. 19.86 RCW)] claims").

¶64  I would hold that the trial court abused its discretion in certifying this class. Because the majority holds otherwise, and for the reasons set forth by Chief Justice Madsen, I respectfully dissent.

SEINFELD, J. PRO TEM., concurs with ALEXANDER, J.

Reconsideration denied February 16, 2012.