2013 NOV -4 PM 12: 33


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FIROZ IBRAHIM, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 69554-1-I |
| | ) | |
| v. | ) | |
| | ) | |
| AIU INSURANCE COMPANY, | ) | PUBLISHED OPINION |
| a foreign insurer, | ) | |
| | ) | |
| Respondent. | ) | FILED: November 4, 2013 |
| | ) | |

DWYER, J. — "Stigma damages" and "diminished value" damages are not synonymous. See Moeller v. Farmers Ins. Co. of Wash., 173 Wn.2d 264, 271, 267 P.3d 998 (2011). In this underinsured motorist insurance coverage dispute, Firoz Ibrahim produced evidence of stigma damages, asserted that it was evidence of diminished value damages, contended that the loss was, therefore, covered by his AIU Insurance Company policy, and filed suit when AIU declined to pay. AIU defended against Ibrahim's claims, averring that it had paid all covered losses. The superior court agreed with AIU and granted its motion for summary judgment, thereby dismissing all of Ibrahim's claims. We affirm.

I

On April 25, 2007, Ibrahim was involved in an automobile collision in King County. Prior to the collision, Ibrahim had entered into a contract for automobile insurance (hereinafter Policy) with AIU that covered the vehicle involved in the

No. 69554-1-I/2

collision—a 2007 Lexus ES 350. Among the terms in the Policy is coverage for property damage losses suffered in a collision with an underinsured driver. This UIM coverage provides as follows:

> Subject to the Underinsured Motorists Property Damage limit of liability stated on *your Declarations Page*, if *you* pay the premium for Underinsured Motorists Property Damage Coverage, *we* will pay for *property damage* caused by an *auto accident* which an *insured* is legally entitled to recover from the *owner* or operator of an *underinsured motor vehicle*.

This coverage, however, is subject to the limitations stated both in the Policy's UIM section and on the Policy's Declarations Page. The limits stated in the UIM section are as follows:

> Our Limit of Liability under this **Part C** for Property Damage to a covered auto from any one *accident* is the lowest of:
> 1. The actual cash value of the covered *auto* at the time of the *accident*, reduced by the applicable deductible and by its salvage value if *you* or the *owner* retain the salvage;
> 2. The amount necessary to replace the covered *auto*, reduced by the applicable deductible, and by the salvage value, if *you* or the *owner* retain the salvage;
> 3. The amount needed to restore the covered *auto* to its pre-loss condition, reduced by the applicable deductible; or
> 4. Any Limit of Liability shown on the *Declarations Page* for *property damage* under **Part C**, reduced by the applicable deductible, and by its salvage value if *you* or the *owner* retain the salvage.

The Declarations Page contains a monetary limit of liability in an amount equal to $25,000 per accident for underinsured motorist coverage resulting in property damage.

Ibrahim's damaged vehicle was subsequently repaired and restored to a physical condition identical to its physical condition prior to the accident. The cost of repair totaled $18,908.62. The repairs were completed on July 2, 2007,

- 2 -

and AIU reimbursed Ibrahim for the cost of the repairs—minus Ibrahim's $500 deductible—on August 13, 2007.

In February of the following year, Ibrahim submitted to AIU a claim for the diminished value of the vehicle, basing his claim on the UIM section of the Policy. Shortly thereafter, AIU's representative sent Ibrahim a letter acknowledging that "diminished value" damages were covered under the Policy, but cautioning that such damages were only available to the extent that they could be proved. AIU's representative further stated that "diminished value" damages could only be determined at the time that the vehicle was sold and that "[a]s the vehicle age wears on, the amount of the perceived diminished value reduces."[1]

On January 24, 2011, Ibrahim filed a lawsuit against AIU. Ibrahim alleged that AIU had wrongly denied his claim for diminished value and, in doing so, had violated certain provisions of the Washington Administrative Code, WAC 284-30-330 (1), (6), (7), as well as the Washington Consumer Protection Act, chapter 19.86 RCW (CPA). Thereafter, AIU moved for summary judgment on all of Ibrahim's claims. In support of his response to AIU's summary judgment motion, Ibrahim submitted an expert witness's appraisal of the vehicle's preloss value and its postrepair value, which differed by $16,961. The expert witness's opinion was explained as follows:

> This collision required repair to a vehicle that has never been in a body shop for damage repair of any kind. Therefore it is my opinion the Diminished Value is to be Inherent Diminished Value. This means that following a high quality Lexus factory approved repair of the vehicle, there is an amount of money that would need to be

---

[1] The significance, if any, of these incorrect statements of the law is discussed infra.

taken off the retail market selling price (with full and complete disclosure to the vehicle buyer that it has been in a major collision). The stigma that it has been is [sic] a "severe wreck" with substantial structural damage would surely turn away a potential buyer when they could purchase a similarly priced Certified Clean History 2007 Lexus ES350 from a dealer or private party, or for that matter spend a little more and get a brand new one without the hassle and mental concern that they are driving a car that has been in a serious wreck.

Although Ibrahim and his expert witness contended that the vehicle's value had dropped as a result of the collision, both acknowledged that the vehicle had been restored to its preloss condition. Ibrahim, in response to a request for admission, stated, "According to the plaintiff's expert, John Walker, Sr. the car has been returned to pre-loss condition to the extent possible with current technology and therefore admits that it has been returned to pre-loss condition." Ibrahim went on to admit that "Plaintiff is unaware of any remaining physical damage to the vehicle in question and therefore admits the same." Ibrahim's expert witness, in his appraisal, stated, "I concluded this vehicle was fully repaired back to its pre-loss condition and there is no remaining physical damage after these repairs."

Ibrahim also asserted that AIU, by misrepresenting the nature of the policy and by forcing him to institute litigation, had acted in bad faith and had violated WAC 284-30-330 (1), (6) (7). The cited WAC provisions provide in pertinent part:

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims:
(1) Misrepresenting pertinent facts or insurance policy provisions.
. . .

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. In particular, this includes an obligation to promptly pay property damage claims to innocent third parties in clear liability situations. If two or more insurers share liability, they should arrange to make appropriate payment, leaving to themselves the burden of apportioning liability.

(7) Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

WAC 284-30-330. Ibrahim averred that AIU's violation of the WAC provisions resulted in a per se violation of the CPA.

Ultimately, the trial court rejected Ibrahim's argument that he was entitled to the loss of value to his vehicle, concluding that the Policy only required AIU to restore Ibrahim's vehicle to its preloss condition, not its preloss value. The trial court also concluded that AIU had violated neither the WAC nor the CPA. Accordingly, the trial court granted AIU's summary judgment motion with respect to all of Ibrahim's claims. Ibrahim filed a motion for reconsideration, which the trial court denied.

Ibrahim appeals.

II

Ibrahim contends that he is entitled to recover $16,961 in "diminished value" to his vehicle. This is so, he asserts, because his expert witness's appraisal posits that the difference between the vehicle's preloss value and postrepair value is in an amount equal to $16,961. We disagree. The damages he is claiming are stigma damages, which are not recoverable herein.

We review de novo a trial court's summary judgment order. Mercer Place

- 5 -

Condo. Ass'n v. State Farm Fire & Cas. Co., 104 Wn. App. 597, 601, 17 P.3d 626 (2000). Therefore, we perform "the same inquiry as the trial court." Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Furthermore, construction of an insurance policy is a question of law. Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 95, 776 P.2d 123 (1989).

"Diminished value" damages are available where a vehicle "'sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its preloss condition.'" Moeller, 173 Wn.2d at 271 (quoting Moeller v. Farmers Ins. Co. of Wash., 155 Wn. App. 133, 142, 229 P.3d 857 (2010), aff'd, 173 Wn.2d 264, 267 P.3d 998 (2011)). One example of this is where weakened metal cannot be repaired. Moeller, 173 Wn.2d at 271. Unlike "diminished value" damages, stigma damages "'occur when the vehicle has been fully restored to its preloss condition, but it carries an intangible taint due to its having been involved in an accident.'" Moeller, 173 Wn.2d at 271 (quoting Moeller, 155 Wn. App. at 142). Put somewhat differently, "diminished value" damages may be available when the vehicle *cannot* be fully restored to its preloss condition, whereas stigma damages may be available when the vehicle *can* be fully restored to its preloss physical condition, but is perceived as being less valuable due to the accident.

Ibrahim's claimed damages are properly characterized as stigma damages. Indeed, his own expert witness characterizes the vehicle's damages as such, explaining that the "stigma" attached to the accident "would surely turn away a potential buyer," given that a potential buyer could purchase a Lexus ES

350 with a clean accident history and avoid "the hassle and mental concern" of driving a car that had been in a serious wreck. Moreover, both Ibrahim and his expert witness admitted that Ibrahim's vehicle had already been restored to its preloss condition. Ibrahim, in response to a request for admission, stated, "According to the plaintiff's expert, John Walker, Sr. the car has been returned to pre-loss condition to the extent possible with current technology and therefore admits that it has been returned to pre-loss condition." Ibrahim went on to admit that "Plaintiff is unaware of any remaining physical damage to the vehicle in question and therefore admits the same." Ibrahim's expert witness, in his appraisal, stated, "I concluded this vehicle was fully repaired back to its pre-loss condition and there is no remaining physical damage after these repairs."

Nevertheless, Ibrahim contends that he is entitled to "diminished value" damages. In making this assertion, Ibrahim mistakenly conflates "loss of value" and "diminished value." The two are not synonymous. "Diminished value" is a term of art, apposite only when a vehicle cannot be restored to its preloss physical condition. It is undisputed that Ibrahim's vehicle was restored to its preloss physical condition. Accordingly, Ibrahim's claimed damages are stigma damages. Thus, the question of whether his Policy covers "diminished value" damages is immaterial.[2]

---

[2] Accordingly, we need not reach the issue of whether AIU's letter sent to Ibrahim is admissible as extrinsic evidence. This is because Ibrahim contends that the letter serves as an admission by AIU that Ibrahim's policy covers "diminished value" damages. Because we conclude that Ibrahim's claimed damages are stigma damages, and not "diminished value" damages, the letter provides no support for Ibrahim's contention that AIU owes him $16,961 in "diminished value" damages.

The material question is whether Ibrahim's claimed damages are recoverable, despite not constituting "diminished value" damages. To determine this, we must look to his Policy's UIM coverage. The phrase "legally entitled to recover," set forth in Ibrahim's UIM coverage section, is a common phrase in insurance contracts and has been interpreted to mean that the UIM insurer "'stands in the shoes' of the uninsured motorist and has the same defenses to a claim that the uninsured motorist would have against the person seeking a recovery against the motorist." Romanick v. Aetna Cas. & Sur. Co., 59 Wn. App. 53, 56-57, 795 P.2d 728 (1990). Accordingly, Ibrahim must have a viable claim against the underinsured motorist in order to recover from AIU. See Romanick, 59 Wn. App. at 57.

Ibrahim does have a viable claim for stigma damages against the underinsured motorist. When a plaintiff's personal property is harmed but not destroyed, the measure of damages may be calculated as the loss in the market value of the property following the harm. McCurdy v. Union Pac. R.R. Co., 68 Wn.2d 457, 467, 413 P.2d 617 (1966). Ibrahim's vehicle was harmed but not destroyed, and the market value lost is coextensive with the stigma damages incurred. Accordingly, Ibrahim is "legally entitled to recover" stigma damages from the underinsured motorist as a matter of tort law.

Nevertheless, Ibrahim is not contractually entitled to recover stigma damages from AIU because AIU validly limited its contractual liability.[3] Insurers

---

[3] We do not hold that an insurance company may vary the liability of a third party tortfeasor. Had the tortfeasor been fully insured, Ibrahim—in all likelihood—would have been

may limit their contractual liability so long as such limitations are not contrary to statute or to public policy. Holz v. N. Pac. Ins. Co., 53 Wn. App. 62, 65, 765 P.2d 1306 (1988). The underinsured motorist statute, RCW 48.22.030, is intended to allow "an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits." Britton v. Safeco Ins. Co. of Am., 104 Wn.2d 518, 531, 707 P.2d 125 (1985). In other words, "the intent underlying the statute is to compensate an injured person at least to the limits of his underinsured motorist coverage, if any." Holz, 53 Wn. App. at 65-66. Additionally, "a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." Holz, 53 Wn. App. at 65.

The underinsured motorist statute contains no express or implicit prohibition on limiting liability to "[t]he amount needed to restore the covered *auto* to its pre-loss condition, reduced by applicable deductible," as AIU's policy provides. See RCW 48.22.030. Although the purpose of the statute is to allow the insured to recover from the UIM insurer as if the insurer were the tortfeasor, this purpose is not vitiated simply because parties contract to limit the insurer's liability. See Holz, 53 Wn. App. at 65-66 ("[T]he intent underlying the statute is to compensate an injured person *at least to the limits of his underinsured motorist coverage, if any.*" (emphasis added)). Here, AIU established a limit on damages

---

able to recover stigma damages from the tortfeasor. Our holding's applicability is limited to instances in which an insured seeks to recover damages from an insurer pursuant to a policy's UIM coverage.

that Ibrahim would otherwise be "legally entitled" to receive, a limit that did not contravene the letter or the spirit of the underinsured motorist statute. Indeed, this limit on damages is similar to any other number of limits included in insurance contracts, including monetary limits on recoverable damages. For instance, Ibrahim agreed that, should his car be damaged by an underinsured motorist, the limit of AIU's liability for that single accident would be set at $25,000. Presumably, if Ibrahim had wanted a higher monetary limit he would have had to pay a correspondingly higher premium. Indeed, Ibrahim does not contend that AIU violated the UIM statute by limiting its liability to $25,000, despite the potential for Ibrahim to have a claim against a tortfeasor in excess of $25,000. Similarly, AIU could contractually limit its liability to repairing Ibrahim's vehicle to its preloss condition. Here, the two parties agreed to the terms of the contract and where the UIM statute is silent, we decline to make it speak.

Additionally, the limitation on liability did not violate public policy. In general, "a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." Holz, 53 Wn. App. at 65. As we explained, AIU's limits of liability did not violate any provision of the UIM statute. Furthermore, no judicial decision has condemned a UIM insurer limiting its liability to restoring a vehicle to its preloss condition, as opposed to its preloss value. Finally, no evidence has been presented that would suggest that these limits of liability are contrary to the public morals.

Moreover, the Policy's structure and content demonstrates that AIU validly limited its liability to restoring the vehicle to its preloss condition and further that AIU did not intend preloss condition to be synonymous with preloss value. An insurance contract must be viewed "in its entirety" and a court "cannot interpret a phrase in isolation." Moeller, 173 Wn.2d at 271. Furthermore, "[w]hen interpreting a document, the preferred interpretation gives meaning to all provisions and does not render some superfluous or meaningless." Bogomolov v. Lake Villas Condo. Ass'n of Apartment Owners, 131 Wn. App. 353, 361, 127 P.3d 762 (2006).

We interpret the phrase "preloss condition" in light of the rest of the contract. The structure and content of the limits of liability section demonstrate why interpreting this phrase in isolation would be in error. Even if "condition" were synonymous with "value" in the abstract—a dubious proposition—the first limit under the limits of liability makes the actual cash value of the covered vehicle at the time of the accident recoverable (so long as it is the lowest of the enumerated limits). Thus, if this dubious proposition were accepted, in effect, two of the four limits on liability would be identical in that both would allow the insured to recover the cash value of the vehicle at the time of the accident.

Accepting this proposition would render the third limit—"preloss condition"—superfluous. The prefatory clause to the limits of liability is as follows: "Our Limit of Liability under this **Part C** for Property Damage to a covered auto

from any one *accident* is the lowest of. . . ." It then lists four possible limits.[4] However, Ibrahim asks us to find identical meaning from provisions with divergent language. Two limits with one meaning would render one of them superfluous, which is what would occur here insofar as the first limit on liability— "actual cash value"—carries an identical meaning to Ibrahim's requested interpretation of "preloss condition." Consistent with our preference for avoiding redundancy, we conclude that AIU intentionally used the word "value" to mean what the car was worth on the market before the accident and that AIU intentionally used the word "condition" to mean the physical state that the car was in before the accident.

III

Ibrahim contends that AIU violated the CPA by misrepresenting facts about the Policy and by forcing Ibrahim to institute litigation to recover his claimed damages. This is so, he asserts, because AIU argued in the trial court that it had, in fact, excluded claims for diminished value, despite its own admission through the letter sent to Ibrahim that diminished value was covered under the policy. We disagree.

_____

[4] 1.    The actual cash value of the covered *auto* at the time of the *accident*, reduced by the applicable deductible and by its salvage value if *you* or the *owner* retain the salvage;

2.    The amount necessary to replace the covered *auto*, reduced by the applicable deductible, and by the salvage value, if *you* or the *owner* retain the salvage;

3.    The amount needed to restore the covered *auto* to its pre-loss condition, reduced by the applicable deductible; or

4.    Any Limit of Liability shown on the **Declarations Page for property damage** under this **Part C**, reduced by the applicable deductible, and by its salvage value if *you* or the *owner* retain the salvage.

An essential requirement in proving a violation of the CPA is showing that the defendant engaged in an unfair or deceptive act or practice. Indus. Indem. Co. of Nw., Inc. v. Kallevig, 114 Wn.2d 907, 920, 792 P.2d 520 (1990). Insurance companies are prohibited from "engaging in unfair or deceptive acts or practices . . . as such acts or practices are defined in regulations promulgated by the insurance commissioner." Starczewski v. Unigard Ins. Grp., 61 Wn. App. 267, 272, 810 P.2d 58 (1991). As Ibrahim correctly notes, "[e]ven a *single* violation by an insurer of any WAC provision is a *per se* violation of the CPA." Appellant's Opening Br. at 11-12 (citing Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 151, 930 P.2d 288 (1997)). However, an insurer who had "'reasonable justification'" for denying coverage—even if the denial of coverage was incorrect—will not run afoul of these prohibitions on unfair trade practice. Starczewski, 61 Wn. App. at 273 (quoting Kallevig, 114 Wn.2d at 917).

Even if AIU's actions would otherwise violate the CPA, AIU contractually limited its liability to Ibrahim such that it was only liable to pay for repairs that would restore the vehicle to its preloss condition, not its preloss value. Because of this, AIU—pursuant to the contract—had a reasonable justification for denying Ibrahim's claim: namely, that Ibrahim failed to demonstrate "diminished value" as that term is defined. Therefore, the trial court did not err in granting summary judgment with respect to Ibrahim's CPA claim.

Ibrahim also contends that AIU misrepresented the nature of the Policy and acted in bad faith by compelling Ibrahim to initiate or to submit to litigation to

recover amounts due under the Policy, and that this violated WAC 284-30-330(1), (7).[5] Ibrahim's claim lacks merit.

The error in Ibrahim's position is that he was not entitled to recover the amount he claims under the Policy. He claims "diminished value" damages but, as explained above, even if his policy did include coverage for "diminished value," he failed to prove any such damages and effectively admitted that he has no "diminished value" claims. Accordingly, AIU did not act in bad faith by compelling Ibrahim to initiate litigation because no amount was due under the Policy.

Affirmed.

We concur:

---

[5] The cited provisions provide in pertinent part:
  The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims:
      (1) Misrepresenting pertinent facts or insurance policy provisions.
      . . .
      (7) Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.
WAC 284-30-330(1), (7).