[No. 623-2.  Division Two.  December 30, 1971.]

CAROL BROWN, *Petitioner, v.* WILLIAM L. BROWN, JR., *Judge of the Superior Court for Pierce County, et al., Respondents.*

*Robert M. Reynolds,* for petitioner.

*Robert R. Hamilton* and *Thomas Dempsey,* for respondents.

PEARSON, J.—Petitioner, Carol Brown, seeks a writ of mandamus to compel Judge William L. Brown, Jr., of the Superior Court for Pierce County, to enter an order that Pierce County Cause No. 205182 be maintained as a class action under Rule 23 of the Civil Rules. A motion to maintain a class action was originally denied in that court. Petitioner and five intervening plaintiffs are challenging the policies of respondent, the City of Tacoma's Department of Public Utilities, regarding the cutting off of utility services for alleged arrearages and the requirement that some customers post a deposit to obtain or maintain service. Four different factual situations exist with regard to the six plaintiffs and the potential class members:

(1) services that are cut off for arrearages at premises other than the customer's present residence;

(2) services that are cut off for disputed arrearages at the present residence;

(3) services that are cut off for failure to pay a required deposit; and

(4) the requirement of a service deposit itself. The complaints basically ask that the respondent either be restrained from cutting off services to plaintiffs and from requiring a service deposit, or that respondent be required to submit to the court for approval a policy governing cut-off procedures and deposit requirements.

The complaints state that they are brought on behalf of the individual plaintiff and "all such residential users in situations similar to those of the plaintiffs." Respondent contends that petitioner and plaintiffs seek to include every residential user, but petitioner states and we agree that the class they seek to include in their suit includes only those residential users who have been or will be either cut off or required to pay a service deposit.

Class actions are governed by Civil Rule 23.[1] Under that

---

[1] Civil Rule 23 provides, in part: "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) The prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

"(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other availa-

rule, there are five prerequisites to maintaining a class action—the four requirements of section (a), and one of the requirements of section (b). The trial court denied a class action in the case at hand, indicating Rule 23(a)(2) had not been met (*i.e.*, there were no questions of law or fact common to the class). As there are few Washington cases on point, and because the federal rule is identical, much of our analysis will be based upon federal cases.

The first issue to be decided in the present case is whether or not mandamus is proper.

RCW 7.16.160 states:

> Grounds for granting writ. It may be issued by any court, except a justice's or a police court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

RCW 7.16.170 states:

> Absence of remedy at law required—Affidavit. The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It must be issued upon affidavit on the application of the party beneficially interested.

■■ Admittedly, a writ of mandamus is an extraordinary remedy and should be used sparingly by appellate courts (*Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791 (10th Cir. 1970)), and pursuant to RCW 7.16.170 will not be granted where there is a plain, speedy, and adequate remedy by appeal. *State ex rel. Burkhard v. Superior*

---

ble methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

*Court,* 11 Wn.2d 600, 120 P.2d 477 (1941). In the case at hand, however, given the unique situation involved in the denial of the class action motion, we feel there was no adequate remedy by appeal. The order denying the class action was clearly not a final order, therefore, there was no interlocutory right of appeal under the usual appeal procedures. The initial action will proceed, whether it is a class action or not, so that the motion denial does not mean the "death knell" of the action, which in some cases has warranted granting appeal. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968). While there is no interlocutory appeal, neither is it likely that there could be an appeal after final judgment. If petitioner wins at the trial level, there may be no appeal at all. Certainly, petitioner is not compelled to consider the interests of the class. The doctrine of collateral estoppel is undeveloped in such an area where the parties are different, and is highly questionable. If a class action is not granted, each potential class member will have to bring his own suit or join in one instituted by another. This ignores the fact that many of those who would benefit from a class action have had problems with respondent, in the first instance, because they are poor and lack financial means. Granted, the present plaintiffs have the aid of Legal Assistance, but there is no guarantee that all other potential class members will have the same benefit unless the rights and duties of the whole class can, at some point, be litigated at once.

It seems to us that a primary function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group. The case at bar involves small claims of the poor who can ill afford, as individuals, the results of respondent's alleged practices; nor can they afford individual suits to determine the legality of the refusal of vital electrical services. This, in itself, in our judgment renders the remedy by appeal inadequate, both for those who seek relief by class action, and for the others excluded by a denial of the

class action. Accordingly, we hold that a writ of mandamus is an appropriate remedy to review the propriety of the superior court's grant or denial of class action status under CR 23.

■ Admittedly, there are many discretionary aspects under CR 23 to the trial court's determination of whether or not a class action is proper. *New York v. International Pipe & Ceramics Corp.*, 410 F.2d 295 (2d Cir. 1969). The question of whether to allow a suit to proceed as a class action is one primarily for the determination of the trial judge, and when mandamus is employed to question this determination, there must be a clear showing of abuse of discretion by the trial court, with the right to such relief appearing clear and undisputable. *Gold Strike Stamp Co. v. Christensen, supra.* Nevertheless, it has been said that the determination of whether common questions of law and fact exist can be carefully reviewed by the appellate court without narrowing its inquiry to abuse of discretion alone. 70 Colum. L. Rev. 1295 (1970); *see Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 22 L. Ed. 2d 459, 89 S. Ct. 1194 (1969). Whether this approach is proper or not, we do not decide, for it is our opinion that the trial court did abuse its discretion in deciding that no common facts existed among the class members.

■ It is stated in *Gold Strike Stamp Co. v. Christensen, supra*, that if the trial court applies the correct criteria to the facts of the case, the decision should be considered as within its discretion. We feel the correct criteria were not applied. As there was no indication in the order of denial as to why common facts did not exist, the statement of facts gives us some insight into the court's reasoning. The court indicated in its oral ruling that respondent might refuse service to a customer based upon such criteria as his welfare status or credit experience.[2] Thus, different facts could

---

[2]The trial judge stated: "I can see in this case where the City might very validly refuse to give one customer service and might give another one service who appears to be in similar circumstances. We all know some people pay their bills and some don't. If the City had a long history of someone on welfare, let's say, who made a sincere effort and

be applied to each member of the class. This reasoning ignores the fact that an important aspect of petitioner's lawsuit is to determine when, *if at all*, respondent is justified in refusing to provide service to a customer. In other words, it is not clear at this point whether respondent can, at any time, deny service because of a disputed unpaid bill or require a service deposit due to a bad credit rating.

It cannot be denied that different facts and perhaps different questions of law exist within the potential class. Some of the present plaintiffs were only required to pay a deposit; others had to pay no deposit, but had their service cut off, either for arrearages at their present residence or for arrearages elsewhere. Nevertheless, all plaintiffs and potential class members suffer under the same allegedly arbitrary and discriminatory conduct by respondent with respect to its customers, and all are potentially subject to having their service cut off for nonpayment of bills or deposits. In essence, respondent is engaged in a "common course of conduct" in relation to all potential class members; *see Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964); *Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42 (S.D. N.Y. 1966), or it can be said that there is a "common nucleus of operative facts." *Esplin v. Hirschi, supra.* An analogy can also be drawn between the threat of service cut-off and a racially discriminatory threat mentioned in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124 (5th Cir. 1969):

> While it is true, as the lower court points out, that there are different factual questions with regard to different employees, it is also true that the "Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class."

the City felt they were the kind of a customer the City wanted to accept and they accepted them, and yet they had somebody else with no credit experience the City might not want to accept them as a customer. And as I understand it, and this is no part of what I'm ruling on this morning, one of the contentions of the Plaintiffs is, in the overall picture, the City has to accept a customer who comes out there and wants to turn on the lights."

Thus, we hold there are questions of fact common to the class, and for the same reason common questions of law exist as well. If it should develop at a later time that different questions of law are involved within the class (*i.e.*, respondent has certain rights and duties related to cutting off service for arrearages and entirely different rights and duties related to requiring service deposits) it would be appropriate under CR 23 (c) (4) (B) to divide the various customers involved into subclasses, rather than to deny a class action altogether. The requirements of CR 23 (a) (2) are present with common questions of fact and law, and the other three requirements of CR 23 (a) clearly are present as well.

CR 23 (b) (2) is the applicable section in the second group of CR 23 requirements. Final injunctive and declaratory relief is sought by petitioner and plaintiffs and this appears to be especially appropriate to the situation presented in this case. Because CR 23 (b) (2) is applicable, all members of the class will be bound by the determination of respondent's rights and obligations to their customers. This, too, is clearly appropriate. There is no requirement of notice under 23 (b) (2), but such notice is discretionary on the part of the trial court (CR 23 (d) (2)) and could undoubtedly be accomplished by an enclosure in the monthly statements as well as reliance upon other means of public notice.

▮ In short, the facts presented in this case appear particularly suited to a class action, and the issuance of an extraordinary writ is warranted. As the court said in *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968):

It cannot be denied that the resolution of the class action issue in suits of this type places an onerous burden on the trial court. But if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.

We, too, favor a liberal interpretation of CR 23, rather than a restrictive one. Not only does liberal application of

the rule avoid multiplicity of litigation, but (1) it saves members of the class the cost and trouble of filing individual suits; and (2) it also frees the defendant from the harassment of identical future litigation. Petition for writ of mandamus is granted.

Accordingly, it is our view that summary denial of the class action was not proper and the trial court should enter an order allowing a class action on such terms and conditions as the trial court may deem appropriate under CR 23(c), and as the action proceeds the trial court should exercise full discretionary authority as provided in CR 23(d).

PETRIE, C.J., and ARMSTRONG, J., concur.