

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE APR 1 9 2018

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on April 19, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JUDITH Q. CHAVEZ, KATHLEEN CHRISTIANSON, ORALIA GARCIA, and MARRIETTA JONES, individually, and on behalf of all similarly situated registered nurses employed by Our Lady of Lourdes Hospital at Pasco, d/b/a/ Lourdes Medical Center, | ) ) ) ) ) ) ) ) | NO. 94592-6 |
| Petitioners, | ) ) | |
| v. | ) ) | EN BANC |
| OUR LADY OF LOURDES HOSPITAL AT PASCO, d/b/a LOURDES MEDICAL CENTER and JOHN SERLE, individually, and in his capacity as an agent and officer of Lourdes Medical Center, | ) ) ) ) ) ) ) | Filed: APR 1 9 2018 |
| Respondents. | ) ) ) | |

FAIRHURST, C.J.—Judith Q. Chavez, Kathleen Christianson, Oralia Garcia, Marrietta Jones, and other registered nurses (nurses) sought class certification in their wage action against their employer, Our Lady of Lourdes Hospital at Pasco d/b/a Lourdes Medical Center and John Serle (Lourdes). The trial

court denied class certification, and the Court of Appeals affirmed. At issue is whether the trial court properly found that the nurses failed to satisfy the predominance and superiority requirements necessary for class certification. We reverse the Court of Appeals and hold that the trial court abused its discretion by finding that individual issues predominate and by failing to compare alternative methods of adjudication. We hold that predominance is met because the dominant and overriding issue in this litigation is whether Lourdes failed to ensure the nurses could take rest breaks and second meal periods and could record missed breaks.[1] We hold superiority is met because a class action is superior to other methods of adjudication for the resolution of these claims. We reverse and remand to the trial court with instructions to certify the class.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The nurses were hourly employees at Lourdes. At the relevant time, Lourdes employed more than 100 nurses in nine different departments. Until 2013, Lourdes used a timekeeping system from Kronos Incorporated and an accounting system from Medical Information Technology Inc. called Meditech. Kronos automatically deducted 30 minutes from an employee's compensable time for a meal period during any shift lasting longer than five hours. When an employee

---

[1] For the sake of efficiency, unless otherwise noted, we refer to rest breaks and second meal periods collectively as breaks or missed breaks.

clocked out, the employee could account for his or her first missed meal period by canceling the automatic deduction, and Lourdes would later pay for those 30 minutes at the appropriate rate. Kronos did not permit nurses to track missed rest breaks. Nor did Kronos permit nurses working 12-hour shifts—a category that includes the majority of nurses at Lourdes—to track missed second meal periods.

In 2012, the nurses filed this individual and class action for unpaid wages, asserting that they regularly missed breaks without compensation due to Lourdes' failure to ensure they could take breaks and record missed breaks. They sought monetary, declaratory, and injunctive relief. The parties engaged in extensive discovery for nearly a year and introduced conflicting facts.

In April 2013, the nurses moved for class certification. The court deferred ruling on the motion at that time and directed the nurses to file summary judgment motions before renewing their class certification motion. The nurses brought three summary judgment motions, and the trial court denied each of them, concluding that issues of fact remained as to whether individual nurses were afforded time to take breaks. The trial court noted that availability of a meal break could depend on the particular shift and that some nurses might be able to take intermittent rest breaks.[2]

---

[2] WAC 296-126-092(5) states, "Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required." Wash. Dep't of Labor & Indus., Admin. Policy ES.C.6.1 § 12, at 4-5 (rev. Dec. 1, 2017), states:

In 2015, the nurses amended their complaint and renewed their class certification motion to include all registered nurses who worked at least one hourly shift at the hospital from June 2009 through March 2013[3] and, alternatively, to certify subclasses of these same nurses by department or shift hours. The trial court denied the motion, ruling that the nurses failed to satisfy the predominance and superiority requirements of CR 23(b)(3). The court was concerned that the differences between shift length and nurse type created manageability issues.

The nurses appealed the denial of certification under CR 23(b)(3). The Court of Appeals affirmed, basing its decision solely on the superiority prong. The Court of Appeals emphasized the deferential nature of the abuse of discretion standard. *See Chavez v. Our Lady of Lourdes Hosp. at Pasco*, No. 33556-9-III, slip op. at 31 (Wash. Ct. App. Feb. 9, 2017) (unpublished), http://www.courts.wa.gov/opinions/

---

An "intermittent rest period" is defined as an interval of short duration in which employees are allowed to rest, relax, and engage in brief personal activities while relieved of all work duties. . . .

The Court of Appeals has recognized that when the nature of work requires employees to engage in constant mental or physical exertion, intermittent rest periods are not permitted. *Pellino v. Brink's*, [*Inc.*,] 164 Wn. App. 668, 696, 267 P.3d 383 (2011). An example of constant mental exertion that does not permit an intermittent rest period is where the nature of the work requires employees to engage in constant mental vigilance to protect life or property, such as service on an armored truck. . . .

Even if an employee engages in brief personal activities, not all short breaks qualify as intermittent rest periods. A series of ten one-minute breaks is not sufficient to meet the intermittent rest period requirement.

[3] In March 2013, Lourdes adopted a new accounting system that permitted tracking of intermittent breaks, missed rest breaks, and missed meal breaks.

pdf/335569_unp.pdf ("We must assume the hospital's testimony to be accurate or else we do not bestow full deference to the court's ruling favoring the hospital."). Although the trial court had not expressly resolved conflicts in the evidence, the Court of Appeals decided to review the facts "in a light most favorable to Lourdes Medical Center." *Id.* at 30. The court acknowledged that "no case . . . explicitly directs [the court] to view the facts in such a gloss for purposes of reviewing a class action ruling." *Id.*

The nurses sought this court's review, which we granted. *Chavez v. Our Lady of Lourdes Hospital*, 189 Wn.2d 1009, 402 P.3d 825 (2017).

## II. ISSUE

Whether the trial court abused its discretion in ruling that the nurses failed to satisfy the predominance and superiority requirements of CR 23(b)(3).

## III. ANALYSIS

A class action is an exception to the usual rule that litigation is conducted by and on behalf of only the individual named parties. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013). A "primary function of the class action is to provide a procedure for vindicating claims [that], taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group." *Brown v. Brown*, 6 Wn. App. 249, 253, 492 P.2d 581 (1971).

CR 23(b) concerns the requirements to maintain a class action and forms the basis of this appeal.[4] A class action may be maintained under CR 23(b)(3) if the "court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[5] Factors to be considered by the court when assessing predominance and superiority include

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

CR 23(b)(3).

Washington courts liberally interpret CR 23 because the "rule avoids multiplicity of litigation, 'saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation.'" *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 318, 54 P.3d

---

[4] CR 23(a) concerns prerequisites for certification and is not at issue here. The trial court ruled that the nurses met all of the CR 23(a) criteria, and that holding was not appealed.

[5] The trial court properly concluded certification under CR 23(b)(1) and (b)(2) is improper because the monetary damages are central, and not merely incidental, to the nurses' claims. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 189, 157 P.3d 847 (2007) (holding that any monetary damages sought under CR 23(b)(1) and (b)(2) must be "'merely incidental to the primary claim for injunctive or declaratory relief'" (internal quotation marks omitted) (quoting *Sitton v. State Farm Mut. Auto Ins. Co.*, 116 Wn. App. 245, 252, 63 P.3d 198 (2003))).

665 (2002) (alterations in original) (quoting *Brown*, 6 Wn. App. at 256-57). Accordingly, courts should err in favor of certifying a class because the class is always subject to the trial court's later modification or decertification. *See Oda v. State*, 111 Wn. App. 79, 91, 44 P.3d 8 (2002).

A trial court's decision to grant class certification is reviewed for manifest abuse of discretion. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 47, 905 P.2d 338 (1995). A trial court's decision to deny class certification will be upheld if "'the record indicates the court properly considered all CR 23 criteria.'" *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 266, 259 P.3d 129 (2011) (quoting *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 188, 157 P.3d 847 (2007)). However, if the trial court fails to articulate its application of the CR 23 criteria to the facts relevant to class certification, an appellate court will reverse the denial of class certification. *See Wash. Educ. Ass'n v. Shelton Sch. Dist. No. 309*, 93 Wn.2d 783, 793, 613 P.2d 769 (1980).[6]

---

[6] The nurses argue that the Court of Appeals erred in reviewing the trial court's decision because it assumed the accuracy of Lourdes' testimony despite a lack of factual findings by the trial court. (The Court of Appeals stated that it had to "assume" Lourdes' testimony is accurate because, in its view, the trial court must have implicitly resolved conflicts in Lourdes' favor when denying certification. *Chavez*, No. 33556-9-III, slip op. at 31.) The nurses are correct. Because the trial court did not explicitly resolve conflicts in the evidence, make factual findings, or conduct an evidentiary hearing, the Court of Appeals had no basis to conclude that Lourdes' testimony was accurate.

The nurses also complain that the trial court committed reversible error by requiring them to move for summary judgment before ruling on their class certification motion. This argument lacks merit. As the Court of Appeals correctly observed, a trial court retains discretion, for purposes of judicial economy, to delay ruling on a motion for class certification until after

A. The trial court abused its discretion by ruling that the nurses failed to satisfy the predominance requirement

To determine whether common issues predominate over individual ones, a trial court pragmatically examines whether there is a common nucleus of operative facts in each class member's claim. *Moeller v. Farmers Ins. Co. of Wash.*, 155 Wn. App. 133, 148, 229 P.3d 857 (2010), *aff'd* 173 Wn.2d 264, 267 P.3d 998 (2011). The relevant inquiry is whether the issue shared by class members is the dominant, central, or overriding issue in the litigation. *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 825, 64 P.3d 49 (2003). The trial court ruled that the nurses had not satisfied the predominance prong of CR 23(b)(3):

> The Court finds that common class issues do not predominate over individual questions because issues regarding shift, nurse type, nurse roles and job duties, patient assignments and census, managers, and department cause the specifics for each class member to overrun any generalities.

Clerk's Papers (CP) at 1012. At the class certification hearing, the trial court explained:

> I still am going to deny the request for class certification because, in my mind, the class issues do not predominate. There are certainly some important class issues that are there and that exist, but, when the rubber meets the road, what happens from shift to shift, from nurse to nurse, from nurse type to nurse type, from census to census and so on, and so on it goes, if we had a class the generalities of what happened at Lourdes or what happens at Lourdes, I believe, would consume and overrun the specifics.

---

hearing dispositive motions. *See Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 807-08, 123 P.3d 88 (2005).

> So, I don't find that the class issues predominate because those specifics are just so important to really understand what's going on in the hospital there. I will say if I were to order a class it would have to include these nine sub classes, which then in my mind would mean that the class would be unmanageable. How do you try a case with nine sub classes and keep it all straight?

2 Verbatim Report of Proceedings (VRP) (Apr. 10, 2015) at 406-07.

The trial court failed to set forth factual findings that would support an order denying class certification and failed to identify the evidence it reviewed to support its decision. The trial court's listing of potential categories of putative class members does not suffice as articulate reasoning for its conclusion that the nurses failed to show common issues predominate over individual questions. *See Wash. Educ. Ass'n*, 93 Wn.2d at 793. The trial court's decision seems to be driven solely by the belief that having plaintiff-nurses from nine departments would make this class unmanageable. But manageability is only one of the CR 23 criteria a trial court must reference when making a certification decision. *See Sitton v. State Farm Mut. Auto Ins. Co.*, 116 Wn. App. 245, 257, 63 P.3d 198 (2003). Because the trial court failed to support its CR 23 analysis with sufficient factual findings and adequate reference to the CR 23 criteria,[7] we review the trial court's decision without affording it the traditional degree of deference.[8]

---

[7] This lack of meaningful analysis, by itself, is sufficient to overturn the trial court's decision. *See Wash. Educ. Ass'n*, 93 Wn.2d at 793.

[8] A trial court is entitled to "noticeably more deference" on a grant of class certification as opposed to a denial. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir.

The law requires Lourdes to schedule breaks at regular intervals unless the "nature of the work" allows employees to take intermittent rest periods. WAC 296-126-092(4), (5); *see Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wn.2d 649, 658, 355 P.3d 258 (2015) ("It is not enough for an employer to simply schedule time throughout the day during which an employee can take a break if he or she chooses. Instead, employers must affirmatively promote meaningful break time. A workplace culture that encourages employees to skip breaks violates WAC 296-126-092 because it deprives employees of the benefit of a rest break 'on the employer's time.'" (citations omitted)). The law also requires Lourdes to compensate nurses for all missed breaks. *See, e.g.*, *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 849-51, 50 P.3d 256 (2002). Plaintiff-witnesses affirmed under oath that there was no system in place to ensure they received breaks and that the nature of their duties did not allow them to take intermittent breaks. Plaintiff-witnesses also affirmed under oath that they were never paid for missed breaks because there was no system in place that allowed them to record missed breaks.[9] Thus, the dominant and overriding issue common to all putative class

---

2010) (internal quotation marks omitted). And a trial court's decision is "'not entitled to the traditional deference'" given to certification decisions when the court "fails to make sufficient findings to support its application of the Rule 23 criteria." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (quoting *Local Joint Exec. Bd. Of Culinary/Bartending Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001)).

[9] It is undisputed that Kronos, the hospital-wide timekeeping system, *did not allow* nurses to track missed breaks or missed second meal periods. *See Chavez*, No. 33556-9-III, slip op. at 4 (explaining that employees must contact payroll to report missed breaks).

members is whether Lourdes failed to ensure nurses could take breaks and record missed breaks.[10]

The trial court ruled that the nurses could not satisfy the predominance requirement because of the individual issues regarding nurse type and shift length. But the court failed to explain how the differences between nurse type and shift length would be relevant to a determination of whether the hospital maintained an adequate system for ensuring that nurses could take breaks and record missed breaks.[11] Factors such as nurse type and shift length are relevant to a damages calculation because they help the court determine how many breaks a nurse was entitled to—but those factors are not relevant to determining the hospital's liability regarding its obligation to comply with WAC 296-126-092 or pay nurses for missed breaks. Furthermore, it is not necessary to prove each plaintiff's damages on an *individual* basis; it is possible to assess damages on a class-wide basis using representative testimony like in *Pellino v. Brink's, Inc.* 164 Wn. App. 668, 684, 267 P.3d 383 (2011). *See Moore v. Health Care Auth.*, 181 Wn.2d 299, 307-08, 332 P.3d 461 (2014) ("When liability has already been established, it is not

---

[10] The missed second meal break issue is only relevant to those nurses who worked a 12-hour shift, and therefore the trial court can consider certifying a subclass containing only those nurses. The majority of nursing shifts at the hospital are 12-hour shifts. And counsel suggested during the hearing on the certification motion that 85 percent of Lourdes' nurses worked a 12-hour shift during the relevant time frame.

[11] The issue of whether the nurses' duties are consistent with the concept of intermittent breaks can be handled on a class-wide basis. The nurses are governed by uniform meal and break policies and are all responsible for patient care when they are in assignment.

necessary for each plaintiff in a class action to prove the amount of damages on an individualized basis.").

"[T]he predominance requirement is not defeated merely because individual factual or legal issues exist; . . . '[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.'" *Miller*, 115 Wn. App. at 825 (third alteration in original) (quoting 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 4.25, at 4-85, 4-84 (3d ed. 1992)). We find that the individual issues in this case do not override the central, predominant issue of whether Lourdes failed to ensure its nurses could take breaks and record missed breaks. We therefore overturn the trial court's finding that the nurses failed to satisfy the predominance requirement and remand for findings consistent with this opinion.[12]

B. The trial court abused its discretion by ruling that the nurses failed to satisfy the superiority requirement

The superiority requirement focuses on a comparison of available alternatives and a determination that a class action is superior to, not just as good as, other available methods.[13] *Schnall*, 171 Wn.2d at 275. The inquiry must involve

---

[12] After liability is determined, the trial court can consider bifurcating the trial into liability and damages stages or decertifying the class.

[13] Traditional alternatives to a class action include joinder, intervention, or consolidation. *Sitton*, 116 Wn. App. at 256. Or with a nationwide class action, an alternative could include statewide class actions. *Schnall*, 171 Wn.2d at 275-76.

rigorous analysis and articulate application of the CR 23 criteria to the relevant facts. *Miller*, 115 Wn. App. at 820; *Wash. Educ. Ass'n*, 93 Wn.2d at 793.

The trial court ruled that the nurses had not satisfied the superiority prong of CR 23(b)(3):

> The Court also finds that a class action is not superior to alternatives such as joinder or individual lawsuits for fair and efficient adjudication of the claims. Finally, the Court also finds that the proposed class, or the proposed nine subclasses by department, would be unmanageable at trial.

CP at 1012. At the certification hearing, the court explained:

> [T]he class would not be a superior because of that confusion that could arise from trying to manage nine sub classes, and I think those sub classes would be essential because of the differences in each of these different departments in the hospital.

2 VRP (Apr. 10, 2015) at 407.

While the trial court concluded that a class action is not superior to joinder or individual lawsuits, it did not explain why. As a general rule, joinder is impracticable where a class contains at least 40 members. *See Miller*, 115 Wn. App. at 821. Because this lawsuit involves well over 40 plaintiffs, we hold that a class action is superior to joinder for the resolution of these claims.[14]

---

[14] When ruling on the numerosity requirement of CR 23(a)(1), the trial court concluded that the high number of plaintiffs in this case renders joinder impractical, yet the trial court still ruled that joinder was superior to a class action for the resolution of these claims. The trial court did not explain this inconsistency.

- 13 -

The trial court also ruled that a class action would be unmanageable.[15] But the fact that individual issues might take some time to resolve does not make a class action unmanageable. *See Miller*, 115 Wn. App. at 825-26; 1 NEWBERG & CONTE, *supra*, § 4.25, at 4-83.[16] Trial courts have a "variety of procedural options to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined." *Sitton*, 116 Wn. App. at 255.

Lourdes' primary argument regarding manageability is that operational differences between nursing departments makes a class action unmanageable because the duties performed by one nurse at Lourdes cannot be generalized to all other nurses. However, the United States Supreme Court has rejected a similar operational differences defense in *Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016). In *Tyson*, workers sued their employer because they were not being compensated for time spent donning and doffing

---

[15] The parties' arguments used the terms "superiority" and "manageability" interchangeably, demonstrating a misunderstanding of the superiority requirements.

[16] This case does not raise the same issues of manageability present in other Washington cases where certification was denied on the basis of manageability. For example, in *Schnall*, consumers from 50 states brought a nationwide class action against AT&T, alleging breach of contract and violation of state consumer protection acts. The court, in a split decision, denied certification in part because "'[a]pplying the law of the customer's home state to the contract claims in this case makes the contract claims unmanageable.'" *Schnall*, 171 Wn.2d at 269. Unlike in *Schnall*, where the plaintiffs lived in 50 different states, here all plaintiffs reside in Washington, work at the same hospital, and are subject to the same collective bargaining

protective gear. *Id.* at 1042. The common question was whether time spent donning and doffing gear was compensable under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219. *Id.* at 1046. Each worker's specific task determined how much time he or she would spend donning and doffing gear, thereby creating individual issues relating to damages. *Id.* at 1043-44.

The operational differences between the different types of workers in *Tyson* is analogous to the operational differences between the different types of nurses in this case. The Court in *Tyson* affirmed class certification for practically the same reasons urged by the nurses here—representative testimony and trial bifurcation could be used to manage the individual issues relating to damages. *Id.* at 1044-50. Guided by this decision, we hold that the differences between nurse type and shift length do not make a class action unmanageable because those issues can be resolved effectively using traditional class management tools.[17] *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1272-73 (11th Cir. 2004) (holding that manageability concerns "will rarely, if ever, be in itself sufficient to prevent certification of a class"); *In re Managed Care Litig.*, 209 F.R.D. 678, 692 (S.D.

---

agreement. The judge would not have to manage the laws of 50 different states in order to resolve the individual issues presented here—only the laws of Washington.

[17] Many federal courts disfavor denial of certification on manageability grounds because "the very concerns that might make a class suit difficult to manage also infect procedural alternatives." 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:72, at 285 (5th ed. 2012) (citing cases from seven circuits holding that there is a presumption against denial of certification on manageability grounds).

Fla. 2002) ("Courts are generally reluctant to deny class certification based on speculative problems with case management."). We therefore reverse the trial court's decision that the class action would be unmanageable. *See Miller*, 115 Wn. App. at 820; *Wash. Educ. Ass'n*, 93 Wn.2d at 793.

In the interests of judicial economy, and in order to guide the court on remand, we address the superiority requirement directly and hold that a class action is superior to other methods of adjudication for the resolution of this case. *See Wash. Educ. Ass'n*, 93 Wn.2d at 793; *Miller*, 115 Wn. App. at 823-24.

The other CR 23(b)(3) factors, in addition to manageability, also weigh in favor of finding that a class action is superior to other methods of adjudication. The first factor considers the interest of each member in "individually controlling the prosecution or defense of separate actions." CR 23(b)(3)(A). Where individual damages are small, the class vehicle is usually deemed to be superior. *See* 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:87, at 363-65 (5th ed. 2012) ("[I]n a small claims case, a court can typically fulfill its entire function simply by stating that the case involves small claims. That implies that there is no alternative form of litigation, and . . . [that] 'the class action is necessarily the superior method of adjudication.'" (footnote omitted)). Here, the individual claims of class members are small and well suited for class-wide resolution. *Id.* § 4:88, at 370 ("[S]mall claims cases somewhat automatically meet the test that a class suit is

superior to other forms of adjudication."). The nurses have an interest in litigating their claims together because each nurse's claim arises from a common nucleus of operative facts and relies on the same evidence. "[F]orcing numerous plaintiffs to litigate the alleged pattern or practice . . . in repeated individual trials runs counter to the very purpose of a class action." *See Sitton*, 116 Wn. App. at 256-57.

The Court of Appeals suggested that the claims under $5,000 should be litigated in small claims court. *See Chavez*, No. 33556-9-III, slip op. at 38. However, small claims court is not an appropriate forum for the litigation of 100 wage and hour claims because these claims implicate important public safety issues. *See, e.g.*, *Lopez Demetrio*, 183 Wn.2d at 658-59 (holding that meal and rest period obligations implicate important public safety issues); *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wn.2d 822, 832, 287 P.3d 516 (2012) (same); *Pellino*, 164 Wn. App. at 688 (same). Small claims courts have limited discovery tools and a rule against attorney representation, increasing the risk of inconsistent results. RCW 12.40.080. Federal courts regularly dismiss a defendant's suggestion that the possibility of small claims court cases is superior to a class action because the litigation may still be time consuming and complex. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*, 250 F. Supp. 3d 354, 362

(D. Minn. 2017); *A&L Indus., Inc. v. P. Cipollini, Inc.*, No. CIV. A. 12-07598 SRC, 2013 WL 5503303, at \*4-\*5 (D.N.J. Oct. 2, 2013) (unpublished).[18]

The second factor considers "the extent and nature of any litigation concerning the controversy already commenced." CR 23(b)(3)(B). Lourdes is not involved in other litigation regarding its meal and break policies. Therefore, this factor favors certification.

The third factor concerns the desirability "of concentrating the litigation of the claims in the particular forum." CR 23(b)(3)(C). Concentrating these claims into one forum and certifying this class is likely the only way that the nurses' rights will be vindicated because individual nurses may be reluctant to sue their employers. *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) ("[C]lass members may fear reprisal and would not be inclined to pursue individual claims."). Individual nurses likely do not have the bargaining power to achieve systemic victories—but here, merely filing this class action appears to have caused Lourdes to uniformly change its break tracking procedures and implement a new accounting system.

---

[18] Federal courts have declined to find individual litigation of small claims to be superior even when statutory damages and attorney fees are available. 2 RUBENSTEIN, *supra*, § 4:87, at 366 ("[C]ourts are generally skeptical that claims with statutory floors and guaranteed attorney's fees render individual suits superior to class actions."). And most courts find that class action is superior to individual litigation when class members' respective claims are for less than $100,000. *Id.* at 367 ("[M]ost courts begin to see individual litigation as feasible, and perhaps superior to a class suit, when class member claims reach, roughly speaking, a six-figure level.").

Each of the CR 23(b)(3) factors weighs in favor of finding that a class action is superior to alternative methods of adjudication such as joinder or small claims court. We remand to the trial court with instructions to certify the class.

## IV. CONCLUSION

We reverse the Court of Appeals and overturn the trial court's denial of certification. We remand to the trial court with instructions to certify.

Fairhurst, C.J.

WE CONCUR:

Johnson

Wiggins, J.

Madsen, J.

González, J.

Owens, J.

Gordon McCloud, J.

Stephens, J.

Yu, J.