# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JARRON ELTER, individually, and as the representative of ALL PERSONS similarly situated, | No.  53196-8-II |
| Respondent(s), | |
| v. | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, USAA GENERAL INDEMNITY COMPANY, and GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, | PUBLISHED OPINION |
| Petitioners. | |

SUTTON, J. — This case involves the measure of loss of use benefits payable for property damage to insured vehicles under the uninsured/underinsured motorist coverage of auto insurance policies issued by United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, and Garrison Property and Casualty Insurance Company (collectively USAA).

David and Marissa Turk filed a class action lawsuit against USAA, claiming that USAA had breached its insurance policies regarding the payment of loss of use benefits, and the trial court certified the class.  After this court reversed[1] the class certification because the Turks were not

---

[1] *Turk v. United Serv. Auto. Ass'n*, noted at 6 Wn. App. 2d 1033, 2018 WL 6523324 (Dec. 11, 2018).

proper class representatives, the trial court entered an order substituting Jarron Elter as class representative and left the original certification order intact. USAA appeals, claiming that the substitution was improper and that the class was improperly certified under CR 23.

We hold that the trial court did not err by substituting Elter as the class representative and that the class was properly certified under CR 23. We also clarify the proper standard for the measurement of loss of use damages. Thus, we remand for further proceedings consistent with this opinion. Nothing in this decision prevents the trial court from revisiting various CR 23 requirements in the future, including typicality or other requirements of Elter as a class representative, if further factual developments warrant reconsideration.

FACTS

In November 2013, Marissa Turk was rear-ended by an uninsured driver, causing her to rear-end the vehicle in front of her. *Turk*, 6 Wn. App. 2d 1033 at *1. At the time of the accident, Marissa had automobile insurance through USAA, which included uninsured/underinsured motorist (UIM) coverage. *Turk*, 6 Wn. App. 2d 1033 at *1. USAA's policy provided coverage for property damage caused by a UIM driver and for loss of use during the period of repair. *Turk*, 6 Wn. App. 2d 1033 at *1.

Marissa was without the use of her vehicle while her vehicle was being repaired. *Turk*, 6 Wn. App. 2d 1033 at *1. In 2014, the Turks filed a class action lawsuit against USAA for breach of contract based on USAA's failure to pay loss of use damages under its UIM coverage.

# I. 2016 CLASS CERTIFICATION

In May 2016, the Turks moved for certification of a class to include:

All USAA insureds with Washington policies issued in Washington State, where USAA determined the loss to be covered under the [UIM] coverage, and their vehicle suffered a loss requiring repair, or the vehicle was totaled, during which time they were without the use of their vehicle, for a day or more.

CP at 401-02. After extensive and supplemental briefing, review of the pleadings and evidence presented by USAA including a spreadsheet of potential class members, and arguments over four days, the trial court determined that the Turks had met their burden, granted the motion for class certification, and entered findings of fact.

The court's findings addressed the CR 23(a) requirements of numerosity, commonality, typicality, adequacy of representation, and the CR 23(b)(3) requirements of predominance, superiority, and manageability:

Plaintiffs allege that USAA sold automobile insurance policies providing first party UIM PD coverage to [them] (and members of the proposed class) that had an identical insuring agreement in Part C of the [UIM policy][.]

USAA admits that it has an obligation to pay for loss of use under this common policy language.

Plaintiffs admit that *at times* USAA will provide a rental vehicle for "loss of use." They note that when this is done, this is recorded in USAA's electronic claims data and the claims files and [is] coded as such. However, they contend that USAA routinely failed to compensate its insureds for loss of use and loss of use damages, even though USAA admits that it is part of the coverage. USAA, in turn, asserts that it routinely discloses and pays the loss. The data provided by USAA in its Turk 500 Claim File Review Master Spreadsheet, suggests that there is no evidence, for a large part of the [p]roposed [c]lass, that the insureds received either disclosure of coverage for loss of use, (and, as such, did not know they could make a claim), or that the loss was every [sic] paid.

. . . .

The parties also strongly dispute the legal standard that applies to the loss. USAA contends . . . that only the value of "actual inconvenience" is recoverable,

and argues that the value of a rental car is not a permissible way of valuing the loss under the policy.

Clerk's Papers (CP) at 910-11 (footnote omitted).

At that time, the plaintiffs requested certification based on the test for loss of use damages stated in *Straka Trucking, Inc. v. Estate of Peterson*, 98 Wn. App. 209, 211, 989 P.2d 1181 (1999), not the inconvenience test in *Holmes v. Raffo*, 60 Wn.2d 421, 431, 374 P.2d 536 (1962). The trial court adopted the *Straka* loss of use standard, under which loss of use may be measured by (1) lost profits, (2) the cost of renting a substitute vehicle, (3) the rental value of the plaintiff's car, or (4) interest. The court ruled that evidence of the value of a rental car is one method of measuring loss of use.

As to the CR 23(a) requirements, the trial court found that the numerosity requirement was easily met as the proposed class was as few as 6,000 people and as many as 11,000 people. The court also found that the commonality requirement was met because a common fact pattern existed based on common policy language, and common questions for each proposed class member as to whether the policy holders were advised about loss of use and what happened for those who were advised. The court noted that these same issues justified certification in *Moeller v. Farmers Ins. Co. of Washington*, 155 Wn. App. 133, 149, 229 P.3d 857, (2010), *affirmed*, 173 Wn.2d 264, 267 P.3d 998 (2011).

The trial court found that the typicality requirement was met because the claims of the representative parties were typical of the potential claims of the class members as a whole. The same alleged unlawful conduct affected the named plaintiffs and the class members and "varying fact patterns in the individual claims will not defeat the typicality requirement." CP at 915 (citing

*Smith v. Behr Process Corp.*, 113 Wn. App. 306, 320, 54 P.3d 665 (2002)). The court noted that the method to determine the period for which loss of use was owed may vary based upon whether the class member's car "was drivable, or whether it was totaled or repaired." CP at 915.

The trial court found that the class representative fairly and adequately protected the interests of the class, and that this fourth requirement was not disputed. But it also found that USAA had challenged the adequacy of the Turks as named plaintiffs.

As to the CR 23(b)(3) requirements, the court found that common questions of law and fact predominated. Those questions were whether loss of use was disclosed by USAA and paid, and if not, what amount of damages was owed for loss of use under the policy. The trial court noted that in a similar case, *Moeller*, the court found that the predominance requirement was met where the "'[c]lass [m]embers shared the same insurance policy, potentially suffered damage, and were allegedly harmed by [the insurer's] course of conduct.'" CP at 916 (quoting *Moeller*, 155 Wn. App. at 150).

The trial court found that these common questions could be addressed by common evidence that was provided in the sample of claims USAA had compiled. The court also noted that using data on similarly situated individuals to determine the loss of use damages for other class members, as the plaintiffs proposed, "has been accepted in Washington and [f]ederal [l]aw as a method to determine damages." CP at 917 (citing *Moore v. Health Care Auth.*, 181 Wn.2d 299, 332 P.3d 461 (2014); *Tyson Foods, Inc. v Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016)). The court then found that "[a]s such, the ability to determine damages using common evidence predominates as well, further supporting [c]lass [c]ertification." CP at 917.

Finally, the trial court determined that a class action was a superior and manageable method to present the claims and USAA's defenses given the difficulties that may present to USAA to access data of the potential class members based on its sample information: "In this case, [c]ertification achieves the economy of time, effort, and expense that CR 23 is designed to provide." CP at 919.

The court's certification order defined the class as: "All USAA insureds with Washington policies issued in Washington State, where USAA determined the loss to be covered under the [UIM] coverage, and their vehicle suffered a loss requiring repair, or the vehicle was totaled, during which time they were without the use of their vehicle, for a day or more." CP at 907. Excluded from the class were those "who received payment for substitute transportation from USAA during the entire period they were without the use of their vehicle." CP at 908 (emphasis omitted).

On the same day, the court granted partial summary judgment to the Turks, dismissing USAA's affirmative defense that it had a valid release of liability from the Turks.

II.  APPELLATE COURT REVERSAL AND VACATION OF CLASS CERTIFICATION ORDER

USAA sought discretionary review and a commissioner of this court granted review of the class certification order, finding that the trial court had committed probable error that substantially altered the status quo by certifying the class. Ruling Granting Review, *Turk v. United Serv. Auto. Ass'n*, No. 50067-1 (Wash. Mar. 10, 2017.

In an unpublished opinion, we held that:

> [w]e reverse the trial court's order granting partial summary judgment to the Turks because a genuine issue of material fact exists as to the scope of the release as intended by the parties.  We also reverse the trial court's class

6

certification order because neither David nor Marissa Turk has a claim typical of the class and neither is an adequate class representative. We remand to the trial court for further proceedings consistent with this opinion.

*Turk*, 6 Wn. App. 2d 1033 at *9. Based on this holding, we declined to address USAA's other arguments, including that the purported class failed to meet other CR 23 requirements. *Turk*, 6 Wn. App. 2d 1033 at *6, n.4. Because we reversed the certification order for lack of typicality and adequacy of representation, we did not reach the other CR 23 questions. *Turk*, 6 Wn. App. 2d 1033 at *6, n.4.

### III. TRIAL COURT'S PROCEEDINGS ON REMAND

On remand, the Turks moved for leave to substitute Elter as the class representative and filed two supporting declarations.

Elter's supporting declaration stated that in 2016, his vehicle was damaged while parked in front of his home by a hit-and-run motorist. At the time of the accident, Elter had automobile insurance through USAA, including UIM coverage. His UIM policy included coverage for property damage in the event a UIM driver was at fault. His UIM policy also included coverage for loss of use of his vehicle during the period of its repair.

Following the accident, Elter was without use of his vehicle for 25 days while it was being repaired. He requested compensation for the loss of use in the amount of $25/day for 25 days, the per day loss of use amount provided for under the policy, totaling $625. USAA refused to pay the amount demanded and instead stated that it would only pay a total of $200 for rental reimbursement. Elter conceded that he was paid $200 as rental reimbursement, even though he did not rent a car.

In response, USAA argued that Elter's declaration did not meet the typicality or adequacy CR 23(a) requirements, and thus, he was not a proper substitute class representative. USAA further argued that because we had reversed and vacated the class certification order, the trial court on remand was required to recertify the class by reanalyzing all CR 23 requirements.

The trial court granted the Turks' motion and substituted Elter as the class representative and otherwise left intact the prior class certification order. The court explained:

> The class certification was reversed because of the atypical representative. And by substituting, I am addressing that issue.
>
>  . . . .
>
> I am not being told by the [C]ourt of [A]ppeals to do anything other than fix this representation issue[.]
>
> . . . .
>
> The class exists as it did before the [C]ourt of [A]ppeals' ruling now that I have changed the substituted representative.
>
> . . . .
>
> [T]he [C]ourt of [A]ppeals only identified one problem with the class certification . . . and I'm trying to correct that.

Verbatim Report of Proceedings (VRP) (March 15, 2019) at 14-17.

#### IV. RULING GRANTING DISCRETIONARY REVIEW

USAA then sought discretionary review of the trial court's order substituting Elter as class representative. We accepted review to:

> [A]ddress as a threshold issue whether the March 15, 2019[,] order substituting the class representative was proper under CR 23. If the trial court did not err in substituting Mr. Elter, the court will address whether the class was properly certified under CR 23.

Order Granting Motion to Modify, (Oct. 18, 2019).

ANALYSIS

I. THE COURT'S SUBSTITUTION OF THE CLASS REPRESENTATIVE WAS PROPER

USAA first argues that the trial court erred by simply substituting Elter as the new representative for the old representative without requiring the plaintiffs to file an amended complaint. USAA claims that the substitution of the named plaintiff is permissible only if the class has already been certified and that the substitution was improper here because we vacated the previous class certification. We disagree.

A. LEGAL PRINCIPLES

We review a trial court's decision regarding class certification for a manifest abuse of discretion. *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 515, 415 P.3d 224 (2018). "[A] trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds." *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007). "Because CR 23 is identical to its federal counterpart, Fed. R. Civ. P. 23, federal cases interpreting the analogous federal provision are highly persuasive." *Schwendeman v. USAA Cas. Ins. Co.*, 116 Wn. App. 9, 19 n.24, 65 P.3d 1 (2003).

CR 23 does not require that a class representative sue individually. *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997). CR 23(a) "does not explicitly require that a class representative must be a named plaintiff in the action." *Peterson v. Alaska Commc'ns Sys. Group, Inc.*, 328 F.R.D. 255, 268 (D. Alaska 2018) (quoting *Morales v. Stevco, Inc.*, No. 1:09-cv-704, 2011 WL 5511767, at *8 (E.D. Cal. Nov. 10, 2011)). Further, "[c]ourts that have

considered the rare circumstance of whether to appoint a non-named plaintiff as an additional class representative have not . . . required the pleadings to be amended." *Peterson,* 328 F.R.D. at 268.

"A class is always subject to later modification or decertification by the trial court, and hence the trial court should err in favor of certifying the class." *Moeller*, 173 Wn.2d at 278; *see also Chavez*, 190 Wn.2d at 515.

B.  APPLICATION

The trial court was required to take the substantive allegations in the complaint as true, including the allegations in Elter's declaration filed in support of the motion for substitution. *Smith*, 113 Wn. App. at 320 n.4.  Thus, the court properly relied on Elter's declaration and the allegations in the complaint to determine whether Elter was an appropriate class representative.

Elter stated in his declaration that he was insured by USAA, his vehicle was damaged in 2016, and USAA accepted his "UM/UIM property damage claim and ultimately paid [him] for the total loss value of the vehicle." CP at 963-64.  He was without his vehicle for 25 days while it was being repaired.  He requested compensation for the loss of use of his vehicle under his policy in the amount of $635 ($25 per day for 25 days).  USAA refused to pay that amount.  USAA stated that it would only pay $200 for rental reimbursement.

In considering the motion for substitution, the trial court reviewed the class definition:

All USAA insureds with Washington policies issued in Washington State, where USAA determined the loss to be covered under the Underinsured Motorist (UIM) coverage, and their vehicle suffered a loss requiring repair, or the vehicle was totaled, during which time they were without the use of their vehicle, for a day or more.

CP at 907. The class definition excluded "USAA employees, and those who received payment for substitute transportation from USAA during the entire period they were without the use of their vehicle." CP at 908 (emphasis omitted).

Here, the trial court found that the allegations in the complaint and Elter's declaration confirmed that Elter met the requirements for a class member. Elter was insured by USAA and had UIM coverage. Elter "suffered a loss requiring repair" when he was without his vehicle for 25 days. CP at 907, 964. Elter has a claim that he did not receive adequate payment for substitute transportation because USAA refused to pay more than $200 for rental reimbursement. Accordingly, the court was well within its discretion to substitute one class representative for another, and substitution was proper even without an amended complaint. The Turks' complaint is still active and the Turks remain named plaintiffs.

USAA argues that substitution of the class representative cannot occur until the class is certified. But the unpublished opinions that USAA cites do not support such a rule.

We hold that the trial court's order granting substitution of Elter as the class representative was proper and the court did not err.

## II. DAMAGES FOR LOSS OF USE

The parties dispute the applicable measure for loss of use damages. USAA argues that the trial court erred by adopting the *Straka* test for the measure of damages rather than the *Holmes* test. Elter argues that the court correctly applied the *Straka* test for loss of use damages and that the *Holmes* test for damages is consistent with *Straka*.

In *Holmes*, our Supreme Court noted the rule that "the owner may recover, as general damages, the use value of which he is deprived because of the defendant's wrongful act." 60 Wn.2d at 429-30. The court held:

> [W]here, as here, a plaintiff has not rented a substitute automobile, he is nevertheless entitled to receive, as general damages in the event liability is established, such sum as will compensate him for his inconvenience. Proof of what it reasonably would have cost to hire a substitute automobile is sufficient evidence to carry this item of damages to the jury, *but is not the measure of such damages*. It is relevant evidence in determining the general damages for inconvenience resulting from loss of use of an automobile.

60 Wn.2d at 431-32 (emphasis added). As a result, the court affirmed the trial court's refusal to give a jury instruction stating that the amount of loss of use damages is "the reasonable rental or use value of the automobile." *Holmes*, 60 Wn.2d at 432 (emphasis omitted).

The court in *Holmes* made it clear that the cost of renting a substitute vehicle was not the measure of loss of use damages. 60 Wn.2d at 432. Instead, the measure is the amount that will compensate the plaintiff for the inconvenience of not having an automobile. *Holmes*, 60 Wn.2d at 432. However, it is significant that under *Holmes*, evidence of the cost of a rental vehicle is admissible at trial and is sufficient for the jury to award loss of use damages. 60 Wn.2d at 432.

Without mentioning *Holmes*, the court in *Straka* quoted a secondary source stating, "'Loss of use may be measured by (1) lost profit, (2) *cost of renting a substitute chattel*, (3) rental value of the plaintiff's own chattel, or (4) interest.'" 98 Wn. App. at 211 (emphasis added) (quoting Dan B. Dobbs, LAW OF REMEDIES: DAMAGES - EQUITY - RESTITUTION § 5.15(1), at 875 (2d ed. 1993)). The trial court adopted this statement. CP at 912.

*Straka* is not necessarily inconsistent with *Holmes*. In *Holmes*, our Supreme Court directly addressed the appropriate measure of damages for the loss of use of a vehicle: "[S]uch sum as will

compensate him for his inconvenience." 60 Wn.2d at 431. *Straka* can be interpreted not as stating a different measure of damages, but as stating one way that a plaintiff can prove loss of use damages is by submitting evidence regarding the cost of renting a substitute automobile. 98 Wn. App. at 211. As such, *Straka* did not contradict the statement in *Holmes* that "[p]roof of what it reasonably would have cost to hire a substitute automobile is sufficient evidence to carry this item of damages to the jury." 60 Wn.2d at 432. In other words, *Straka* stated that one method of proving loss of use damages is evidence of the cost of a rental, but it did not state that this was the sole method. 98 Wn. App. at 211.

On remand, the trial court must rely on *Holmes* for determining the proper measure of damages for loss of use. But applying *Holmes* also means recognizing that evidence regarding the costs of a rental automobile is relevant and admissible to prove loss of use damages.

### III. THE CLASS WAS PROPERLY CERTIFIED UNDER CR 23

We review a trial court's class certification decision for a manifest abuse of discretion. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 47, 905 P.2d 338 (1995). We will uphold the trial court's decision if the record shows that the court considered the CR 23 criteria and that the court's decision is based on tenable grounds and is not manifestly unreasonable. *Lacey*, 128 Wn.2d at 47.

CR 23 governs class actions. To certify a class, the plaintiff must

> meet the requirements of CR 23(a): numerosity, commonality, typicality, and adequacy of representation. Once those have been met, [they] must further satisfy the tougher standard of CR 23(b)(3) and prove that common legal and factual issues predominate over individual issues and that a class action is an otherwise superior form of adjudication.

*Schnall v. AT&T Wireless Serv., Inc.*, 171 Wn.2d 260, 269, 259 P.3d 129 (2011) (emphasis omitted).

CR 23 must be liberally interpreted. *Moeller*, 173 Wn.2d at 278. Therefore, "the trial court should err in favor of certifying the class." *Moeller*, 173 Wn.2d at 278. Further, "[a] class is always subject to later modification or decertification by the trial court." *Moeller*, 173 Wn.2d at 278.

USAA claims that class certification is improper because under *Holmes*, there would need to be testimony from each class member and damages would vary from insured to insured. USAA argues that the commonality, predominance, and superiority requirements in CR 23 were not satisfied.[2] Br. of App. at 44, 49. We disagree.

A. CHALLENGED CR 23(a) REQUIREMENT: COMMONALITY

USAA argues that because the plaintiff class cannot meet the commonality requirement under CR 23 that class certification is improper. We disagree.

The allegations establish that USAA did not pay loss of use damages to its insureds who declined a rental car, such as Elter. This common course of conduct is sufficient to satisfy the commonality requirement of CR 23(a).

USAA argues that it is "undisputed" that under the *Holmes* standard, class certification is improper because there would need to be testimony from each class member and damages necessarily would vary from insured to insured. However, the fact that the individual loss of use damages vary in amount does not defeat commonality. *See Chavez*, 190 Wn.2d at 519 ("[I]t is not

---

[2] USAA also argues that "ascertainability" was not satisfied. But CR 23 does not list an "ascertainability" requirement.

necessary to prove each plaintiff's damages on an *individual* basis; it is possible to assess damages on a class-wide basis using representative testimony."). "That class members may eventually have to make an individual showing of damages does not preclude class certification." *Smith*, 113 Wn. App. at 323

The plaintiffs have demonstrated that the class members share common issues of law and fact. Accordingly, the trial court did not err by finding commonality was met.

B. CHALLENGED CR 23(b)(3) REQUIREMENTS

1. Predominance

USAA next argues that because the plaintiff class cannot meet the CR 23 predominance requirement, class certification is improper. We disagree.

The predominance requirement is similar to, but more stringent than, the commonality requirement. "The difference is that CR 23(a) is satisfied by the mere existence of a common legal or factual issue, whereas CR 23(b)(3) requires that common legal and factual issues predominate over any individual issues." *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 825, 64 P.3d 49 (2003). "[T]he predominance requirement is not defeated merely because individual factual or legal issues exist; rather, the relevant inquiry is whether the issue shared by the class members is the dominant, central, or overriding issue shared by the class." *Miller*, 115 Wn. App. at 825.

Here, the difference in the amount of loss of use damages owed to the individuals does not defeat the point that USAA did not pay its insureds loss of use damages. *See Chavez*, 190 Wn.2d at 518-19. The plaintiff class members have demonstrated that common issues predominate over individual issues. Accordingly, the trial court did not err by finding that the predominance requirement was met.

2. Superiority

USAA next argues that the trial court erred in finding that the superiority requirement was met without requiring the plaintiffs to submit a "valid trial plan" for the class action. We disagree because CR 23 does not require a "valid trial plan" prior to the threshold ruling certifying a class.

CR 23(b)(3) instructs the trial court to decide whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rule further directs the trial court to consider factors including:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

CR 23(b)(3). The rule does not require that a valid trial plan be filed prior to class certification. "This is a highly discretionary determination that involves consideration of all the pros and cons of a class action as opposed to individual lawsuits." *Miller*, 115 Wn. App. at 828.

Here, the trial court considered the CR23(b)(3) factors and determined that the class was as potentially small as 6,000 people or as large as 11,000 people, and that a class action was a fair and efficient adjudication of the action, superior to conducting individualized inquiries. On this record, we hold that the trial court did not err by finding that the superiority requirement was met.

## CONCLUSION

We hold that the trial court did not err by substituting Elter as the class representative and that the class was properly certified under CR 23. We also clarify the proper standard for the measurement of loss of use damages. Thus, we remand for further proceedings consistent with

16

No. 53196-8-II

this opinion. Nothing in this decision prevents the trial court from revisiting typicality or other requirements of Elter as a class representative, if further factual developments warrant reconsideration.

SUTTON, J.

We concur:

GLASGOW, A.C.J.

MAXA, J.